CUDAHY PACKING COMPANY OF NEBRASKA *v.* PARRAMORE, AS WIDOW AND GUARDIAN, ETC., ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF UTAH.

No. 107. Argued November 14, 1923.—Decided December 10, 1923.

1. Agreeably to the principles sustaining state workmen's compensation laws as consistent with the Fourteenth Amendment, an employer may be required to compensate his employee for an injury of which his employment is a substantially contributory cause, though not the sole or proximate one. P. 422.

2. Whether an accident is so related to the employment that exaction of compensation may escape condemnation as clearly arbitrary and unreasonable, must depend upon the particular circumstances of the case. P. 424.

3. An employee, going to work at his employer's factory by the customary and only practicable way, was killed by a locomotive while crossing, on a public road, a railroad adjacent to the plant, a few minutes before the time when his day's service as a stationary engineer was to begin. *Held,* that imposition of liability on the employer for the benefit of the workman's dependents by a state compensation law, was constitutional. P. 426.

60 Utah, 161, affirmed.

ERROR to a judgment of the Supreme Court of Utah affirming an award of workmen's compensation by the Utah Industrial Commission.

*Mr. George T. Buckingham,* with whom *Mr. Thomas Creigh, Mr. R. B. Webster* and *Mr. Stephen E. Hurley* were on the brief, for plaintiff in error.

There was no employment of deceased by plaintiff in error at the time of the accident. Death did not result from an industrial accident. *In re McNicol,* 215 Mass. 497; 28 R. C. L. pp. 804, 805; *Bamberger Electric Ry. Co.* v. *Industrial Comm.,* 59 Utah, 257; *Kowalck* v. *New York Consol. Ry. Co.,* 229 N. Y. 489; *Re De Voe,* 218 N. Y. 318; *Tallon* v. *Interborough Rapid Transit Co.,* 232 N. Y. 410;

*Clapp's Parking Station* v. *Industrial Accident Comm.*, 51 Cal. App. 624; *Orsinie* v. *Torrance,* 96 Conn. 352.

The question to be determined is whether or not the statute as construed and applied is valid. *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282; *Merchants' National Bank* v. *Richmond,* 256 U. S. 635.

The contention that there is no evidence to support the action of the state court raises a purely legal question. *Truax* v. *Corrigan,* 257 U. S. 312; *Merchants' National Bank* v. *Richmond, supra; Jones National Bank* v. *Yates,* 240 U. S. 541.

A finding upon undisputed facts is a finding of law, even though it may be styled a finding of fact. *Bates & Rogers Co.* v. *Allen,* 183 Ky. 815; *Hochspeier* v. *Industrial Board,* 278 Ill. 523; *Glatzl* v. *Stumpp,* 220 N. Y. 71; *In re Fisher,* 220 Mass. 581.

A finding without evidence (as in this case) is beyond the jurisdiction of the Commission. It comes " under the Constitution's condemnation of all arbitrary exercise of power." *Interstate Commerce Comm.* v. *Louisville & Nashville R. R. Co.,* 227 U. S. 88; *Bamberger Electric Ry. Co.* v. *Industrial Comm.,* 59 Utah, 257; *Clapp's Parking Station* v. *Industrial Accident Comm.,* 51 Cal. App. 624.

In determining the legal effect of facts in evidence as a deprivation of plaintiff in error's rights under the Fourteenth Amendment, " This Court must analyze the facts as averred and draw its own inferences as to their ultimate effect and is not bound by the conclusions of the State Supreme Court in this regard." *Truax* v. *Corrigan,* 257 U. S. 312.

Since the Commission was without jurisdiction, its award deprived plaintiff in error of its property without due process of law. *Scott* v. *McNeal,* 154 U. S. 34; *Interstate Commerce Comm.* v. *Louisville & Nashville R. R. Co.,* 227 U. S. 88.

The restraints of the Fourteenth Amendment bind equally judges, legislatures, executive officers. *Myles Salt*

*Co.* v. *Iberia Drainage District,* 239 U. S. 478; *Scott* v. *McNeal,* 154 U. S. 34; *Chicago, B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226; *Twining* v. *New Jersey,* 211 U. S. 78; *Ex parte Virginia,* 100 U. S. 339; Schofield, Const. Law and Equity (1921) pp. 5, 9, 21.

A judgment of a state court which deprives a person of property without due process amounts to a denial of a right secured by the Fourteenth Amendment " even if it be authorized by statute." *Myles Salt Co.* v. *Iberia Drainage District,* 239 U. S. 478; *Chicago, B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226; *Scott* v. *McNeal,* 154 U. S. 34; Schofield, Const. Law and Equity, (1921), pp. 5–37.

Irrespective of the validity of the statute, the action of the Utah court was arbitrary, oppressive and unreasonable, and contrary to law, and therefore it violates the Fourteenth Amendment. *Myles Salt Co.* v. *Iberia Drainage District,* 239 U. S. 478; *Chicago, B. & Q. R. R. Co.* *Chicago,* 166 U. S. 226; *Scott* v. *McNeal,* 154 U. S. 34; *Prudential Insurance Co.* v. *Cheek,* 259 U. S. 530; Schofield, Const. Law and Equity (1921), pp. 5–37; *Twining* v. *New Jersey,* 211 U. S. 78; *Ex parte Virginia,* 100 U. S. 339.

This Court has uniformly upheld the constitutionality of Workmen's Compensation Acts, but solely on the principle that death or injury must be a part of the hazard of the industry. The Utah act as construed and applied extends far beyond this principle. *Arizona Employers' Liability Cases,* 250 U. S. 400; *Middleton* v. *Texas Power & Light Co.,* 249 U. S. 152; *Mountain Timber Co.* v. *Washington,* 243 U. S. 219; *Hawkins* v. *Bleakly,* 243 U. S. 210; *New York Central R. R. Co.* v. *White,* 243 U. S. 188.

*Mr. J. Robert Robinson,* Assistant Attorney General of the State of Utah, with whom *Mr. Harvey H. Cluff,* Attorney General, *Mr. William A. Hilton,* Assistant Attorney

General, and *Mr. Frederick C. Loofbourow* were on the brief, for defendants in error.

Mr. Justice Sutherland delivered the opinion of the Court.

This case arises under the provisions of the Utah Workmen's Compensation Act, which provides for the payment of compensation for personal injury or death of an employee by accident " arising out of or in the course of his employment." Compiled Laws, Utah, 1917, § 3113, and amendment, Laws, Utah, 1919, c. 63.

The Cudahy Packing Company, on August 9, 1921, and prior thereto, owned and operated a meat packing plant at a point about six miles north of Salt Lake City. Its employees generally resided in that city and in villages located north and south of the plant, only a few living in the immediate vicinity thereof.

In going to and from the plant the workmen proceeded along a main highway running north and south and passing the plant at a distance of about half a mile to the east. From this point a public road runs west to and beyond the plant, crossed, before reaching the plant, by three lines of railroad, one of which, the Rio Grande Western, lies immediately adjacent to, and from which switches lead directly into, the plant. The only practicable way of ingress and egress for employees was along this road and across these railroad tracks, and that was the way customarily used. Joseph Parramore was, and for a considerable time had been, employed at the plant at a weekly salary as a stationary engineer. He lived at Salt Lake City. On the morning of August 9, 1921, he rode to the plant in the automobile of another employee, for the purpose of going to work. The automobile crossed over two of the railroad tracks and when upon that of the Rio Grande was struck by an engine and Parramore was instantly killed. This happened about seven minutes before the time when his

service as an engineer was to begin. Upon these facts the Utah Industrial Commission awarded compensation to Parramore's dependents. The Supreme Court of the State, upon a review, affirmed the award and held that the accident was one within the terms of the statute. 60 Utah, 161.

By this construction and application of the statute we are bound and the case must be considered as though the statute had, in specific terms, provided for liability upon the precise facts hereinbefore recited. *Ward & Gow* v. *Krinsky,* 259 U. S. 503, 510. The question saved in the state court and presented here is whether the statute, as thus construed and applied, is valid under the provisions of the Fourteenth Amendment.

Defendants in error have submitted a motion to dismiss the writ of error on the ground that no federal question is involved, but it is clearly without substance, and is overruled.

That the statute is constitutional upon its face is established by previous decisions of this Court (*New York Central R. R. Co.* v. *White,* 243 U. S. 188; *Hawkins* v. *Bleakly, Id.* 210; *Mountain Timber Co.* v. *Washington, Id.* 219; *Arizona Employers' Liability Cases,* 250 U. S. 400; *Madera Co.* v. *Industrial Accident Commission,* 262 U. S. 499) and the only inquiry we need make is whether it is constitutional as applied and enforced in respect of the facts of the instant case. See *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S. 282, 288-289. It is settled by the decisions of this Court and by an overwhelming array of state decisions, that such statutes are not open to constitutional objection because they abrogate common law defenses or impose liability without fault. But the contention here, shortly stated, is that the accident was one which occurred off the premises of the employer on a public road, outside the hours of employment and while the employee was not engaged in any business of the em-

ployer; that it was not the result of any industrial risk but arose from a common peril to which the public generally was exposed; and that consequently liability is imposed arbitrarily and capriciously. It may be assumed that where an accident is in no manner related to the employment, an attempt to make the employer liable would be so clearly unreasonable and arbitrary as to subject it to the ban of the Constitution; but where the accident has any such relation we should be cautious about declaring a state statute creating liability against the employer invalid upon that ground. The modern development and growth of industry, with the consequent changes in the relations of employer and employee, have been so profound in character and degree as to take away, in large measure, the applicability of the doctrines upon which rest the common law liability of the master for personal injuries to a servant, leaving of necessity a field of debatable ground where a good deal must be conceded in favor of forms of legislation, calculated to establish new bases of liability more in harmony with these changed conditions. Workmen's Compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of the wages and the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured. And this is not to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say that it is enough if there be a causal connection between the injury and the business in which he employs the latter—a connection substan-

tially contributory though it need not be the sole or prox-. imate cause. Legislation which imposes liability for an injury thus related to the employment, among other justifying circumstances, has a tendency to promote a more equitable distribution of the economic burdens in cases of personal injury or death resulting from accidents in the course of industrial employment, and is a matter of sufficient public concern (*Mountain Timber Co.* v. *Washington, supra,* p. 239) to escape condemnation as arbitrary, capricious or clearly unreasonable. Whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case. The fact that the accident happens upon a public road or at a railroad crossing and that the danger is one to which the general public is likewise exposed is not conclusive against the existence of such causal relationship, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree.

Upon this question of causal relationship, the English decisions are instructive. In *Pierce* v. *Provident Clothing and Supply Co., Limited,* [1911], 1 K. B. 997, where a collector of the company, while riding a bicycle in the course of his employment, with the acquiescence of the company, was knocked down and killed by a tramcar, the employer was held liable because, by reason of his duties, the employee was more exposed to the risks of the streets than ordinary members of the public. In the opinion by Buckley, L. J., it is said (p. 1003): "An accident arises out of the employment where it results from a risk incidental to the employment, as distinguished from a risk common to all mankind, although the risk incidental to the employment may include a risk common to all mankind." See also *Martin* v. *J. Lovibond & Sons, Limited,* [1914], 2 K. B. 227. So where a workman was employed in a

place and under circumstances exposing him to more than ordinary risk of injury by lightning, such an injury was held to be one arising out of the employment. *Andrew* v. *Failsworth Industrial Society, Limited,* [1904], 2 K. B. 32.

In *Anderson & Co., Limited,* v. *Adamson,* 50 Scottish Law Reporter, 855, where a workman engaged during a violent gale in erecting a structure was injured by a slate blown from the roof of an adjoining building, a risk that all persons were more or less exposed to, it was held that as the workman was obliged to work in a stooping position and therefore could not see the slate coming, he was exposed beyond the normal risk, and could recover. The court said: " If it is the normal risk merely which causes the accident, the answer must be that the accident did not arise out of the employment. But if the position which the workman must necessarily occupy in connection with his work results in excessive exposure to the common risk (cf. *Ismay's* case, [1908] A. C. 437; *Rodger,* 1912 S. C. 584), or if the continuity or exceptional amount of exposure aggravates the common risk (cf. *M'Neice,* 1911 S. C. 12; *Warner* [1912] A. C. 35), then it is open to conclude that the accident did not arise out of the common risk but out of the employment."

The same doctrine has been declared, under the American statutes, by many of the state courts. See, for example: *Procaccino* v. *E. Horton & Sons,* 95 Conn. 408; *Empire Health & Accident Ins. Co.* v. *Purcell,* 76 Ind. App. 551; *Judson Manufacturing Co.* v. *Industrial Accident Commission,* 181 Cal. 300; *In re Bollman,* 73 Ind. App. 46; *Lumbermen's Reciprocal Ass'n* v. *Behnken,* (Tex.) 226 S. W. 154, [aff'd 112 Tex. 103]; *De Constantin* v. *Public Service Commission,* 75 W. Va. 32. The basis of these decisions is that under the special facts of each case the employment itself involved peculiar and abnormal exposure to a common peril, which was annexed as a risk incident to the employment.

Here the location of the plant was at a place so situated as to make the customary and only practicable way of immediate ingress and egress one of hazard. Parramore could not, at the point of the accident, select his way. He had no other choice than to go over the railway tracks in order to get to his work; and he was in effect invited by his employer to do so. And this he was obliged to do regularly and continuously as a necessary concomitant of his employment, resulting in a degree of exposure to the common risk beyond that to which the general public was subjected. The railroad over which the way extended was not only immediately adjacent to the plant but, by means of switches, was connected with it and in principle it was as though upon the actual premises of the employer.

We attach no importance to the fact that the accident happened a few minutes before the time Parramore was to begin work and was, therefore, to that extent, outside the specified hours of employment. The employment contemplated his entry upon and departure from the premises as much as it contemplated his working there, and must include a reasonable interval of time for that purpose. See *Gane* v. *Norton Hill Colliery Co.*, [1909] 2 K. B. 539, 544; *DeConstantin* v. *Public Service Commission, supra.*

In view of the facts and circumstances peculiar to this case it was fairly open to the State Supreme Court to conclude that the necessary causal relation between the employment and the accident sufficiently appeared to save it from the constitutional objection; and its judgment is accordingly.

*Affirmed.*

MR. JUSTICE McKENNA, MR. JUSTICE McREYNOLDS and MR. JUSTICE BUTLER dissent.