### In re AUERBACH.

No. 49421.

District Court, S. D. New York.

Aug. 5, 1931.

John J. Bennett, Jr., Atty. Gen. (Joseph A. McLaughlin, Asst. Atty. Gen., of counsel), for claimants.

Rosenberg, Goldmark & Colin, of New York City (Godfrey Goldmark, of New York City, of counsel), for trustee.

HENRY K. DAVIS, Referee.

Bankrupt, a manufacturing confectioner of this city, had a petition in bankruptcy filed against him August 9, 1930. He was duly adjudicated August 22, 1930, and thereafter Irving Trust Company was duly elected and is now acting as his trustee.

Agreed statements of facts were entered into by the attorneys, thus obviating the taking of oral testimony.

There are five claimants, viz. Maria L. Figueroa, Frank Navarro, Rosario Biggica, Sophie Sabath, widow of Aaron Sabath, and Abe Altman, and also it is sought to file nunc pro tunc, six months having elapsed since the date of adjudication, the claim of Vito Partuesi.

The first five claims above mentioned were all duly made by the said claimants and filed in the office of the referee within the six-month period.

The claims of Figueroa, Navarro, and Biggica are all claims based on personal injuries received by claimants while in the employ of bankrupt prior to the filing of the petition herein, viz. August 9, 1930, and awards were made to them by the Compensa-tion Commission after the date of the filing of the petition, viz. to Figueroa September 5, 1930, Navarro October 14, 1930, Biggica October 14, 1930. Sabath's was a death claim wherein the award was made to decedent's widow, the claimant, September 30, 1930. The claim of Abe Altman was for injuries sustained September 15, 1923; the award was made March 31, 1925, for an extended period with periodical payments, and it is claimed that the payments to which claimant would have been entitled, if there had been no bankruptcy, and if all the payments were made, would amount to $2,440.

The claims here considered are filed under section 63a of the Bankruptcy Act (11 USCA § 103(a), which is as follows: "Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest; (2) due as costs taxable against an involuntary bankrupt who was at the time of the filing of the petition against him plaintiff in a cause of action which would pass to the trustee and which the trustee declines to prosecute after notice; (3) founded upon a claim for taxable costs incurred in good faith by a creditor before the filing of a petition in an action to recover a provable debt; (4) founded upon an open account, or upon a contract express or implied; and (5) founded upon provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge, less costs incurred and interest accrued after the filing of the petition and up to the time of the entry of such judgments."

If there are claims against an estate which can be proved and allowed because they are within the provisions of the statute just quoted, and they have not been liquidated, they can be liquidated as provided in section 63b of the Bankruptcy Act (11 USCA § 103(b). It is not claimed that liquidation has been had in this case as section 63b, ante, directs.

The principal question in this case is whether a claim for personal injuries received prior to the filing of the petition and for which an award was made after the filing of the petition is a claim which can be allowed within the meaning of section 63a of the Bankruptcy Act, ante.

It must be conceded that Congress in 1898, when the present Bankruptcy Act was passed, did not have in mind the legislation based on the police power of the state which some fifteen years later found expression in Workmen's Compensation Act (Consol. Laws, c. 67, Laws N. Y. 1914, c. 41). This statute was upheld in Jensen v. Southern Pacific Co., 215 N. Y. 514, 109 N. E. 600, L. R. A. 1916A, 403, Ann. Cas. 1916B, 276; White v. N. Y. Cent. & H. R. R. Co., 216 N. Y. 653, 110 N. E. 1051; and N. Y. Cent. R. Co. v. White, 243 U. S. 188, 37 S. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629.

The main authority asserted for the claims here considered is Post v. Burger & Gohlke, 216 N. Y. 544, 111 N. E. 351, 353, Ann. Cas. 1916B, 158, where Judge Chase said: "The failure to provide such insurance takes away in part the benefits that the employer receives pursuant to the act. The employer in this case assented to the contract of employment under the act to the extent of providing insurance with the insurance carrier. The act, in view of its humane purpose, should be construed to intend that in every case of employment there is a constructive contract between the employer and employee, general in its terms and unlimited as to territory, that the employer shall pay as provided by the act for a disability or the death of the employee as therein stated. The duty under the statute defines the terms of the contract."

The question at issue in the Post Case was whether the Workmen's Compensation Act applied to an injury received in New Jersey by a workman engaged in his employer's business for an employer insured in New York. The court's decision, it seems to me, is found in the following quotation: "Our conclusion as to the intention of the Legislature is reached from the act as a whole. The intention is also specifically shown by the fact as already stated that an employee, as defined by this act, includes a person engaged in the course of his employment away from the plant of the employer. The language of the statute, if construed literally, and we see no reason why it should not be, expressly includes the employee in this case, as he was engaged in his employment in New Jersey, away from the plant of his employer, and under the employer's express direction."

The quotation on which the Attorney General relies, that the act makes a "constructive contract," that is, a contract implied in law or in fact, is dicta, not necessary for the decision which the court reached, to wit, that the act "expressly includes the employee in this case, as he was engaged in his employment in New Jersey, away from the plant of his employer, and under the employer's express direction." Post v. Burger & Gohlke, supra.

That the relations of the parties under the Workmen's Compensation Act is not based on constructive contract the New York Court of Appeals has directly stated. In Cameron v. Ellis Cons. Co., 252 N. Y. 394, 169 N. E. 622, 623, the Court said: "The relations of employer and employee arise by agreement. The Workmen's Compensation Law regulates these relations from the time the employment begins. Obligations and rights under the statute are not elective. They rest upon the command of the state, and not upon agreement of the parties. The concept of a 'constructive contract' to assume obligations which are created by law is open to criticism. Smith v. Heine Boiler Co., 224 N. Y. 9, 119 N. E. 878, Ann. Cas. 1918D, 316, and authorities there cited. Even if, in a sense, it is only a fiction, it points the way to the principle that the obligations created by the Workmen's Compensation Law are an integral part of the relations of employer and employee, and are coterminous with the employment regulated by the state. Obligation to pay or provide compensation for injury arising out of and in the course of an employment which is regulated by the Workmen's Compensation Law is imposed by the statute. The problem presented here is whether the state has undertaken to regulate the claimant's employment at a fixed place in Canada."

In Cudahy Packing Co. v. Parramore, 263 U. S. 418, 422, 44 S. Ct. 153, 154, 68 L. Ed. 366, 30 A. L. R. 532, Mr. Justice Sutherland said: "It is settled by the decisions of this court and by an overwhelming array of state decisions, that such statutes are not open to constitutional objection because they abrogate common-law defenses or impose liability without fault. But the contention here, shortly stated, is that the accident was one which occurred off the premises of the employer on a public road, outside the hours of employment and while the employee was not engaged in any business of the employer; that it was not the result of any industrial risk but arose from a common peril to which the public generally was exposed; and that consequently liability is imposed arbitrarily and capriciously. It may be assumed that where an accident is in no manner related to the employment, an attempt to make the employer liable would be so clearly unreasonable and

arbitrary as to subject it to the ban of the Constitution; but where the accident has any such relation we should be cautious about declaring a state statute creating liability against the employer invalid upon that ground. The modern development and growth of industry, with the consequent changes in the relations of employer and employee, have been so profound in character and degree as to take away, in large measure, the applicability of the doctrines upon which rest the common-law liability of the master for personal injuries to a servant, leaving of necessity a field of debatable ground where a good deal must be conceded in favor of forms of legislation, calculated to establish new bases of liability more in harmony with these changed conditions. Workmen's Compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of the wages and the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured."

It will be noted that the Supreme Court says, supra, "Workmen's Compensation legislation rests upon the idea of status, not upon that of implied contract."

From the foregoing, I reach the conclusion that the claims here considered do not come within the basis of a "contract express or implied" within the language of section 63a of the Bankruptcy Act. The claims sound in tort, and tort claims are not provable under the Bankruptcy Act. In Schall v. Camors, 251 U. S. 239, page 251, 40 S. Ct. 135, 137, 64 L. Ed. 247, the court said: "Upon every consideration we are clear that claims based upon a mere tort are not provable." To the same effect is In re New York Tunnel Co., 159 F. 688 (C. C. A. 2d).

There has been very little litigation in bankruptcy in this circuit on the question here. In matter of Rockaway Soda Water Mfg. Co., 36 Am. Bankr. Rep. 640, Referee Tipling in the Eastern District of New York held that a claim in all respects like those here considered was not provable. That case could have been dismissed in limine, for the reason that it was made by the Industrial Commissioner and not by the claimant. Section 57a of the Bankruptcy Act (11 USCA § 93a).

That is the only reported case on the question here involved in this circuit the referee has been able to discover, and no case has been brought to my attention which denies the conclusion reached.

The only question remaining is the right of Vito Partucsi to file his claim after the expiration of the six-month period. It is stated in effect that the case of this claimant was disallowed March 24, 1930; that it was reopened March 6, 1931; that an award was made March 9, 1931; and that the six-months period in which to file claims with the referee had expired. It is evidently recognized that the statutory provision relative to the filing of claims is mandatory, and that there is no discretion for allowing their filing. In re Lago (D. C.) 38 F.(2d) 887, 15 Am. Bankr. Rep. (N. S.) 22; R. R. Rose Co. (D. C.) 43 F.(2d) 446. The Attorney General, however, claims that the reopening of the claim constitutes the "litigation" referred to in section 57n of the Bankruptcy Act (11 USCA § 93(n). It has been held, however, and is the law, that such litigation is litigation to which the bankruptcy estate, against which the claim is sought to be filed, is a party. In Powell v. Leavitt, 150 F. 89, 91 (C. C. A. 1) Judge Lowell said: "The phrase 'liquidated by litigation' is general, and the object of the exception which is made to the statutory limit of time is plainly to allow the proof of a claim after the expiration of a year by a creditor who during that time was engaged in litigation with the bankrupt's estate concerning its liability to him." See, also, In re Barrett & Co. (D. C.) 27 F.(2d) 159; Collier on Bankruptcy (13th Ed.) vol. 2, p. 1183, and cases cited.

For these reasons the application to file the claim mentioned nunc pro tunc must be denied.

The claim, however, if filed, would be in the same class as the others here considered. I do not overlook the fact that the commission made the award in the Altman case long before bankruptcy. That, however, I do not think affects the conclusion. An award is not a judgment within the meaning of section 63a of the Bankruptcy Act. The award has the same status as a verdict. It has been held that a verdict in a tort case rendered prior to bankruptcy is not provable. In re Ostrom (D. C.) 185 F. 988.

Having reached the conclusion that all of the claims mentioned are outside the provi-

sions of the Bankruptcy Law, the application of the trustee to strike out must be granted. Having reached this conclusion, it is unnecessary to consider what, if any, parts of the claims are entitled to preference.

Application granted. Please settle order on two days' notice.

MACK, Circuit Judge.

This proceeding duly having come on to be heard upon the certificate of Referee Henry K. Davis on five several petitions to review five orders of the said referee, entered by the said referee on July 10, 1931, and the motion having been argued by counsel and due deliberation having been had, it is ordered and decreed that the following orders of the said referee in bankruptcy be, and the same hereby are, in all respects affirmed, to wit: Order of July 10, 1931, expunging claim of Frank Navarro; order of July 10, 1931, expunging claim of Rosario Biggica; order of July 10, 1931, expunging claim of Sophie Sabath; order of July 10, 1931, expunging claim of Maria Figueroa; and it is further ordered and decreed that the order of the said referee dated July 10, 1931, denying the motion of Vito Partuesi to file a claim nunc pro tunc be, and the same hereby is, affirmed; and it is further ordered and decreed that the said five petitions to review the said five orders be, and the same hereby are, severally dismissed.