J. C. MARTIN *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 8968)

Submitted January 10, 1940. Decided February 6, 1940.

J. W. *Maxwell,* for appellant.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for appellee Workmen's Compensation Appeal Board.

Fox, JUDGE:

On the 7th day of August, 1928, J. C. Martin, while employed by the Comago Smokeless Fuel Company, sustained a compensable injury for which he was allowed compensation, in varying amounts, by reason of increased awards, and payments of compensation were made up to the 4th of January, 1936, in the aggregate sum of $1970.00.

Within the statutory period, he applied for further compensation, and on October 26, 1938, was awarded a total permanent disability rating which carries payment of compensation during the remainder of his life at the rate of $8.00 per week. No appeal was taken from this award and it is not now involved. Subsequent to this award, the Compensation Commissioner charged against the account of the C. H. Mead Coal Company, a corporation, and a subscriber to the fund and appellant herein, the sum of $2,030.00 for the Martin total permanent award, representing the amount determined as the average cost of such rating to the compensation fund, less the sum already paid. After a hearing, upon facts stipulated by counsel, the Commissioner affirmed his action in making said charge. This action of the Commissioner was sustained by the Compensation Appeal Board, and the Coal Company appeals.

As noted above, Martin, at the date of his injury, was an employee of the Comago Smokeless Fuel Company. On September 14, 1929, that company transferred its property to the Mead Smokeless Coal Company, and the latter company operated the same until the first day of December, 1936, when it sold its operation to the appellant, C. H. Mead Coal Company. In short, the coal operation in connection with which Martin sustained his injuries has, by successive transfers, passed to the appellant, and it was the owner thereof at the time of the final award made to Martin by the Compensation Commissioner. The charge against the appellant is based upon sub-section (e) of Rule 22, promulgated by the Workmen's Compensation Commissioner, and is in the words and figures following:

> "(e) Any subscriber who purchases or otherwise acquires another subscriber's operations, shall assume and be liable for all charges on claims of predecessor subscriber resulting from awards made after date of acquisition."

This rule was adopted under the authority of Code, 23-3-1, which authorizes the Compensation Commissioner to "adopt rules and regulations with respect to the collection,

maintenance and disbursement of such funds (premiums collected), not in conflict with the provisions of this chapter", and was promulgated prior to the date of Martin's injury.

The question to be decided is whether or not the appellant, by the acquisition of the property formerly held by the Comago Smokeless Fuel Company, can, under the rule quoted above, be held accountable for the payment of the charge made against it on account of Martin's injuries. The rule, if authorized by the statute, would seem to make the appellant liable; but the right of the Compensation Commissioner to promulgate such a rule and enforce the same is questioned. The contention of the appellant is that the rule cannot be enforced, and that the obligation arising from Martin's injuries is one that will have to be assumed by the Compensation Commissioner and paid out of the surplus fund belonging to the group of employees of which the appellant was one; that to uphold the order of the Commissioner would be to require it to pay a debt in the making of which it had no part, and for which it is in no wise responsible; that the statute having provided a fund out of which Martin's compensation may be paid, resort must be had to that fund; that to charge it against the appellant would be to enforce "a secret lien"; that the statute nowhere seeks to charge property with compensation premiums, but only charges the same against the employer who operates the same; and that the enforcement of the Commissioner's order would violate the due process clauses of both the state and federal constitutions. On the other hand, the Commissioner says that he had authority, under the statute, to promulgate the rule; that the same is equitable, and is neither arbitrary nor unreasonable; that it is necessary to the carrying out of the general intent and purposes of the compensation law; and a rule to which the appellant impliedly assented when at its election it continued as a subscriber to the Compensation Fund on its acquisition of the property of the Mead Smokeless Coal Company.

The present compensation law had its beginning at the Regular Session of the Legislature, 1913. Industries were divided into groups and different rates applied to each group, but they were made uniform as to employers in each separate group. The Legislature, Regular Session 1919, amended the act and provided for what is known as an experience rating, and, under this act, the Commissioner is required on the first day of July of each year to adjust rates to meet actual experience of employers. The rates provided for are intended to meet the demands of the compensation funds and to provide a reasonable surplus for each group. Code, 23-2-4. This provision as to surplus seems to be in addition to the general provision, Code, 23-3-1, by which it is provided that a percentage of premiums paid shall be turned into a surplus fund which shall be sufficiently large to cover the catastrophe hazard and all losses not otherwise specifically provided for. As we understand appellant's contention, it is that the losses to the fund occasioned by the sale of the property involved in this case shall fall upon the surplus fund accumulated by the group or class to which the Comago Smokeless Fuel Company belonged, and, possibly, if that should prove insufficient, resort might be had to the general surplus or catastrophe fund.

In the beginning, there was doubt as to the constitutionality of Workmen's Compensation laws. The very basis of every such law is to make employers liable for injuries to their employees engaged in industry regardless of fault, and it was contended that such a law operated to violate the constitutional provisions securing the owner of property from being deprived thereof without due process of law. This contention was applied especially to any compensation law compulsory in character. On this principle, the first of such laws enacted by the legislature of New York was held unconstitutional. *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271, 94 N. E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912 B, 156, decided in 1911. Later, in the same year, a compensation law, elective in character, was upheld in Massachusetts. *Opinion of Justices,* 209 Mass. 607, 96 N. E.

308. Our law is founded upon the elective principle, and its constitutionality has been upheld by this court. *De Francesco* v. *Piney Mining Co.,* 76 W. Va. 756, 86 S. E. 777; *Watts* v. *Ry. Co.,* 78 W. Va. 144, 88 S. E. 659; *Rhodes* v. *Coal Co.,* 79 W. Va. 71, 90 S. E. 796. More recent cases tend to sustain compulsory acts as a proper exercise of the police power of the state. *Railroad Co.* v. *White,* 243 U. S. 188, 37 S. Ct. 247, 61 L. Ed. 667, L. R. A. 1917 D, 1, Ann. Cas. 1917 D, 629. In *Cudahy Packing Co.* v. *Parramore,* 263 U. S. 418, 44 S. Ct. 153, 154, 68 L. Ed. 366, 30 A. L. R. 532, it was held that "Workmen's Compensation legislation rests upon the idea of status, not upon that of implied contract, that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operation he contributes his work as the owner contributes his capital." If this be true, then the fact that our law is framed upon the elective principle is not important, for when the election to come under the act occurs, the employer and the employee assume a status imposed upon them by the state under its police power, rather than a contractual relation.

The legislature, having created this status as between the employer and employee, undertook to bring about such an administration of the law as would be just and equitable. It will be admitted, we think, that the burden thereof should equitably fall upon the industry as a whole, in the first instance, and further upon the individual employer in proportion to the risk to the general fund occasioned by the manner in which he operates his plant. On this principle, an employer ought not to be permitted to escape his individual liability by a sale of his plant, and, as between employers, impose an additional burden on the entire group; and yet there are situations where, obviously, this result cannot be escaped, as in cases of the exhaustion of a mine, insolvency, or liquidation through judicial processes. To guard against this result, so far as possible, sub-section (e), Rule 22, was promlugated, which, as will be noted, applies only to awards made after property is purchased, and can only apply after the pur-

chaser has elected to become a subscriber to the fund. The rule does not arbitrarily impose a liability upon the purchaser by compulsion. Such liability is only created by the voluntary act of the purchaser in electing to become a subscriber to the fund, and when he so elects he takes the act subject to all existing rules legally promulgated. It may be said that the purchaser's election was not voluntary; that he is forced to become a subscriber. We do not think this position can be sustained. The only compulsion is the denial of the right to make certain defenses formerly available at common law, and the power of the legislature to deny such defenses is clear under the cases cited above. He may elect to otherwise provide insurance, or to defend at law with certain defenses barred. The enforcement of a law which the legislature had the right to enact cannot be said to be coercion in a legal sense.

Was sub-section (e) of Rule 22 legally promulgated? On the background which we have endeavored to trace, we think it was. The specific authority vested in the Compensation Commissioner is set out in Code, 23-3-1, and he is not only authorized but required to adopt rules and regulations with respect to the "collection, maintenance and disbursement" of the fund, and there runs through the act requirements which call for such rules and regulations. He is required to adopt rules for the maintenance of the fund, which we think means the maintenance of the solvency of the fund in its entirety, and in the several groups. The rule in question bears upon the ultimate solvency of the fund, and therefore its maintenance, in a special way. It requires no far-reaching vision to detect the evils which might arise, with resulting loss to the fund, from a rule which would permit a given operation or plant to be entirely excused from obligation to the fund by the mere transfer thereof to a third party. As the appellant says, the statute imposes no lien or charge on property to secure payment of premiums, but the property occupies a status on which rules and regulations may be based, and which may be enforced when the owner elects to operate the property

under the compensation act. While resulting losses may be covered by increased rates, such increases may tend to deprive the fund of its most desirable subscribers, the ultimate result of which might be to weaken the fund, and, in the long course, affect its solvency. Any reasonable rule tending to prevent the possibility of such a result, is within the true intent and meaning of the statute, and should be upheld. There is no suggestion of bad faith in the case before us, but the holding sought by the appellant would, we fear, open the door to fraudulent practices, against which the rule in question was designed to guard.

An employer, occupying a status imposed on him under the police power of the state, cannot justly complain of the rule. True, it imposes on him a burden for which he was not responsible, and if we were treating the case as one of tort or contract, his defense would be invulnerable. But for the burden thus imposed under the rule, there is compensation in the protection which the law affords. If the rule be reasonably necessary to the permanent maintenance of the fund, then, in electing to avail himself of the protection thereof, he should not complain, and, under the principles of election and estoppel, will not be heard to complain that the cost of the means and methods of its preservation may, in part and under certain circumstances, fall on him. This is not the only burden which a purchaser assumes. If he purchases a property with a bad accident record, he will have to operate it with the burden of that record until he establishes a better one, and yet he was not responsible for the record made prior to his purchase.

We are unable to follow the argument that because a surplus fund has been built up out of which compensation to Martin can be paid, resort must be had thereto. Undeniably, compensation will be paid to Martin from the surplus fund, if the charge against the appellant is not sustained, just as other claims are paid where, for various reasons, resort to the surplus is compelled. But, in our opinion, such a concession does not mean that

resort may not be had to other available funds. There is nothing in the statute which defines the character of claims payable out of the surplus funds, and we may reasonably surmise that the surplus stands to meet great disasters and emergencies, as well as demands which can be met from no other source. Nor are we impressed with the suggestion that the rule creates a secret lien. The books of the Compensation Commission are open to the public, and from those books can be obtained, with substantial accuracy, the liability of each subscriber to the fund. True, some risk must be taken, but that is not peculiar to transactions of this character. We think the appellant should have availed itself of information open to it with respect to the status of the Martin claim before taking over the property out of which his injuries resulted, and that when it failed to do so, and elected to place the operation of the purchased property under the protection of the fund, it thereby assumed the obligation which sub-section (e) of Rule 22 imposes, and should be held liable thereunder.

The order of the Compensation Appeal Board is affirmed.

*Affirmed.*

On petition for rehearing:

Counsel for appellant complains that we have ignored his contention, set out in his original brief, that Section 4, Article 2, Chapter 23 of the Code, provides for the imposition of rates to be paid by subscribers to the Compensation Fund, and that subsection (e) of Rule 22 is in conflict with the statute. We hold that the two provisions are separable and do not conflict. One applies to the fixing of rates in the first instance; the other is an attempt to insure the collection of the rates thus imposed.

Much is said of the discrimination and hardship involved in our ruling. That one subscriber, under circumstances bringing him within the application of the rule is required to assume liability thereunder, while as to others in the same class such circumstances do not

develop, does not amount to discrimination, and therefore, the fact that one employer may never be required to assume and pay compensation for injuries sustained by an employee of a predecessor, does not relieve others who are required so to do, under circumstances calling for the application of the rule as to them. On the point of hardship, it need only be said that the maintenance of the fund is all important, both for the employer and the employee; and a general rule reasonably adopted to that end, and otherwise legal, will not be set aside because it would appear to work a hardship in an individual case. No statute or rule, having broad application, works exact justice in all situations.