SHANNON, Judge.
ITiis petition for writ of certiorari is seeking review of an order of the Full Commission of the Florida Industrial Commission, Workmen’s Compensation Division, which order sustained an award of compensation entered by a Deputy Commissioner in favor of the claimant. The order of the Deputy Commissioner made the following findings of fact:
“2. The decedent was a sixty (60) year old white male. On July 30, 1956 the decedent was employed as a laborer by Minute Maid Corporation, loading small pieces of scrap lumber onto a truck. He worked from 8:00 A.M. to shortly after 9:00 A.M., at which time he complained of being too hot, and sat down in the shade. Shortly thereafter he again complained that he was too hot and thirsty and went to the first aid room where he laid down on a cot. While at the first aid room he vomited and had a bowel movement. He complained of weakness in his arms and legs, and of being cold especially in his legs. He was sweating profusely. However, at no time while he was at the first aid room did he complain of any pain or pressure in his chest or arm. The temperature ranged from approximately 79 degrees to 84 degrees between 8:00 and 9:00 A.M., and from 84 degrees to 87 degrees between 9:00 A.M. and 10:00 A.M. The humidity ranged from 82 percent at 8:00 A.M. to 77 percent at 9:00 A.M., to 67 percent at 10:00 A.M.
“3. Decedent was admitted to the hospital at 10:50 A.M. At that time, in addition to the above symptoms he was now complaining of severe pain in the right side of his chest. His temperature was 98 degrees. The heart sounds were of poor quality. At that time his condition was diagnosed as heat exhaustion with possible coronary thrombosis and beginning cardiac failure. The decedent was placed in an oxygea tent and given a sedative. His condition then appeared to improve but at 2:05 P.M. his breathing became labored and at 2:15 P.M. he died. The immediate cause of death was a coronary thrombosis. An autopsy revealed that heart vessels were markedly atheroma-tous with 40 to 80 percent narrowing.
⅜ * * ⅜ * *
“5. Claimant contends that decedent’s work caused him to have heat exhaustion which in turn triggered the coronary attack. The carrier contends that decedent suffered a coronary attack which was not causally connected with his work and that decedent did not have heat exhaustion. The question is a very close one and turns upon medical interpretation of the substantially undisputed facts.
“6. It appears that in 90 to 95 percent of cases of coronary thrombosis the victim has arm or chest pain or pressure at the onset of the attack. (See Page 9 of Dr. Evans’ deposition.) This was absent. Except for this important exception, the decedent’s symptoms were consistent with the onset of a coronary thrombosis (without heat exhaustion) and completely consistent with the onset of a coronary in the five percent (5%) to ten percent (10%) who do not have pain or pressure in the chest or arms. On the other hand decedent’s symptoms were consistent with heat exhaustion except that his temperature was a little higher than usual. Also heat exhaustion often triggers a coronary, particularly in older persons like the decedent. On the other hand, the attack began in midmorning before the highest temperatures had been reached, but while the humidity was fairly high. There are a number of other troublesome evidentiary facts to be weighed both pro and con:
“7. I find that the moderate exertion of loading the truck under the con *106 ditions present resulted in decedent suffering heat exhaustion. This appears to be an unexpected or unusual result happening suddenly. I further find that the heat exhaustion triggered the coronary thrombosis which caused decedent’s death. * * * ”
The Full Commission approved this order with a dissent written by one member.
The petitioner submits nine questions for us to consider but, in view of our opinion, it will be necessary to pass on but two. The questions, in the petitioner’s language, are:
“There is no competent substantial evidence to support the finding that such heat exhaustion ‘triggered’ the coronary thrombosis which caused decedent’s death.
“Where the question of the causal connection between the death of an employee from a coronary thrombosis and his employment turns upon medical interpretation of substantially undisputed facts and the evidence as to such causal connection leaves the question within the realm of speculation it is error to award compensation.”
It will be necessary to set out certain portions of the testimony of the only doctor who testified favorably to the claimant, Dr. Benneveld. The deceased employee was seen by Dr. Benneveld, a general practitioner, at 10:50 A.M. on the day of his illness, who made a diagnosis as follows:
“Q. Would you tell us please of the objective findings on that initial examination? A. The patient was too ill to give much coherent information; a brief cursory physical examination revealed blood pressure to be 164/118, pulse 92, respiration 28 and temperature 98 degrees; the heart sounds were of very poor quality on the cardiac auscultation;
“An admitting diagnosis was made of heat exhaustion with a possible coronary thrombosis and beginning cardiac failure.
“Q. Now Dr. Benneveld tell us if you will the symptoms.
⅜ * # * # *
“The Commissioner: All right go ahead.
“Q. (By Mr. O’Neal) Tell us Doctor if you will the symptoms and the basis upon which you formed the diagnosis of heat exhaustion. A. The appearance of the patient and clinical findings.
“Q. What appearance was made? A. The patient was clammy, profuse perspiration, and heart sounds were of poor quality, pulse was not of good volume.
******
“A. I would have to base my .findings on purely objective findings; when the man came into the hospital he was obviously in a state of cardiac failure. He was also in a state of heat exhaustion. May I transgress just a little here?
⅜ * * * * *
“Q. (By Mr. O’Neal) Then to, to summarize your testimony then Doctor would it, would it be fair to say then that in your opinion this man suffered initially from heat exhaustion? A. It is awfully hard to make a statement of what came first because we only saw the man and he was brought in in this particular state, now what came first it is impossible for me to say.
***** £
“The Commissioner: Well were all the symptoms he had as indicative of a cardiac failure as they were indicative of heat exhaustion? In other words, *107 are there some symptoms which are peculiar to heat exhaustion which are not peculiar to a cardiac failure, so that you could say he had heat exhaustion or cardiac failure?
“The Witness: No, no, no, it is awfully hard to make a delineating fact there.”
After the death of the employee, there was an autopsy made which gave the cause of death with the findings as follows:
“1. Thrombus with occlusion of anterior descending branch of left coronary artery, recent.
“2. Coronary atherosclerosis, severe with 60% to 70% narrowing of either side.
“3. Acute passive congestion of spleen and kidneys.
“4. Petechiae of kidneys due to anoxia.
“5. Bilateral apical scarring and pleural adhesions suggesting old healed tuberculosis.
“Cause of Death
“It is felt that death in this instance is due to the thrombus demonstrated in the anterior descending branch of the left coronary artery. This thrombus is of recent origin as substantiated by the microscopic appearance and the fact that no myocardial changes could be identified.”
We have set out the attending physician’s findings, as well as the autopsy report. While we deem it unnecessary to set out the opinions of the two doctors who testified for the employer, it will suffice to say that the identical symptoms, which were found present in the deceased were the same as would be present if the employee’s death was caused solely from the coronary thrombosis, as given by the autopsy report and, therefore, on a petition for writ of certi-orari, it is necessary to ascertain if there was any substantial, competent evidence to support the findings of the Deputy Commissioner or whether his findings were based on speculation or whether he had arrived at his decision by indulging in an inference placed upon an inference.
The Deputy Commissioner found that “the moderate exertion of loading the truck under the conditions present resulted in decedent suffering heat exhaustion. This appears to be an unexpected or unusual result happening suddenly. I further find that the heat exhaustion triggered the coronary thrombosis which caused decedent’s death. * * *”
Were there any facts present which could legitimately lead him to find that the employee had, first, heat exhaustion and second, coronary thrombosis, which was triggered by the heat exhaustion when the objective symptoms would he identical for both diseases? In this case the employee was loading the truck with “moderate exertion”, and the thermometer was, between 8:00 and 9:00 o’clock in the morning, between 79° and 84° and the humidity ranged from 82° to 77°. The evidence fails to show that the employee did any heavy work at the time or just prior to his attack. If there were any abnormal duties that he had performed which would have a tendency to bring on heat exhaustion, then we could possibly support the Deputy Commissioner’s order, but, as we see it, there were no such factors present. In the case of Alexander Orr, Jr., Inc. v. Florida Industrial Commission, 1937, 129 Fla. 369, 176 So. 172, our Supreme Court cited the Alabama case of Gulf States Steel Co. v. Christison, 228 Ala. 622, 154 So. 565, 569, which states in part as follows:
“If the heat exhaustion arose out of the employment, as well as in its course, we think it is clear that any harmful effect upon the physical structure of the body of the employee, which *108 was a proximate result of it, is an accident under our statute. Section 7596 (i), Code; Gulf States Creosoting Co. v. Walker, 224 Ala. 104, 139 So. 261; New River Coal Co. v. Files, 215 Ala. 64, 109 So. 360; 1 Honnold on Workmen’s Compensation, p. 281, § 86.
'“In connection with the sort of accident here involved, the principle to which most authorities give assent is that the harmful condition does arise out of the employment, if, in the performance of the duties for which he was engaged, in the manner required or contemplated by the employer, it is necessary for the employee to expose himself to a danger, materially in excess of that to which people commonly in that locality are exposed, when not situated as he is when thus performing his service, and that such excessive exposure may be found to have been the direct cause of the injury, though operating upon other conditions of common exposure. Am. Fuel & Clay Products Co. v. Gilbert, 221 Ala. 44, 127 So. 540; Cudahy Packing Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532.
“That principle has been specifically thus applied to sunstroke or heat prostration or heat exhaustion in many varying conditions. The authorities in the main adopt and apply it substantially as we have thus stated. It would serve no good purpose to refer to the discussions and various applications of the principle. Many cases are analyzed in texts and notes as follows: 1 Schneider’s Workmen’s Compensation Law (2d Ed.) pp. 701 to 710; 1 Honnold’s Workmen’s Compensation, p. 428; 13 A.L.R. 979; 53 A.L.R. 1085; 46 A.L.R. 1218; 25 A.L.R. 147; 16 A. L.R. 1038, 1039.”
It will be readily seen that the rationale of the Alexander Orr case, supra [129 Fla. 369, 176 So. 173], was to the eifect:
“ * * * The record shows that Maxwell, deceased was employed as a plumber by Alexander Orr, Jr., Inc., laying sewer pipe at a place known as Sunny Isles, in Northern Miami Beach, though the location of the work was some 600 yards from the ocean and about the same distance from an inland bay, on August 29, 1935; that it was a hot, sunshiny day and Maxwell was required to use, and did use, in the performance of his work, a hand furnace or blow torch, which necessarily increased the heat to which he was subjected. His work was at or near the ground. The record shows that he had been subjected to this intense heat for several hours when he collapsed and after a short rest returned to his work, continued for some little while, when he again collapsed and shortly thereafter died.”
We have given extended quotations from the case of Alexander Orr, supra, but, to illustrate the same line of thought of the Supreme Court in coronary cases, we wish to call attention to and cite the case of Arkin Construction Company v. Simpkins, Fla.1957, 99 So.2d 557, 559, where the deceased employee, a 55 year old carpenter fell about five feet as a result of which he skinned the inside of his leg and then proceeded to work the balance of the day. On the following morning he returned to work and was limping. He died two days after his fall. The autopsy report gave as the cause of death “myocardial failure due to myocardial fibrosis and coronary atherosclerosis with insufficiency.” The specialist produced by the claimant in that case testified that in his opinion Simpkins’ fall and resulting pain and tension precipitated or “triggered” the occurrence of the fatal heart attack on Saturday. The specialist produced by the defendant apparently testified to the contrary.
Mr. Justice O’Connell states in the opinion:
*109 “It is elementary that the conclusion or opinion of an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value. It is equally well settled that the basis for a conclusion cannot be deduced or inferred from the conclusion itself. The opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion.
* * * * * *
“There is also another reason that prevents our accepting the testimony of this witness as clear evidence of the causal relations between the fall and the death of Simpkins by heart failure.
“This specialist testified that Simp-kins, the deceased claimant, had the heart of a person a hundred years or more in age; that because of the condition of his heart, Simpkins had a diminished cardiac reserve; that he did not know and no one knew how close to the line of heart failure Simp-kins had been from day to day; that almost anything might push him over the line and bring about the heart failure in Simpkins; and that the question of the triggering mechanism in heart failure is one of considerable speculation ‘and we are never really sure what it is.’ ”
The evidence in this case plainly shows that the employee died from a heart condition, and the claimant must, in order to overcome this fact, show by some substantial evidence not with certainty, but with reasonable probability that the employee suffered from heat exhaustion caused by his employment and then, secondly, that the heat exhaustion causally brought about the attack from which he died.
The claimant in this case failed, except by speculation, to show that the employee did have heat exhaustion, or that if he did, it arose out of, and in the course of his employment as required by the Orr case, supra, or that the heat exhaustion triggered the heart condition from which he died.
For the reasons stated above the cer-tiorari is granted and the order of the Full Commission is quashed with directions to enter an order quashing the order of the Deputy Commissioner.
KANNER, C. J., and ALLEN, J., concur.