MURDOCK, Judge,
concurring in the result.
I" agree with the majority that the outcome of the present case should be governed by the so-called “increased-risk” doctrine. Accordingly, I concur in the result reached by the court in this case. I cannot fully agree, however, with the reasoning the court uses to reach its conclusion that the “increased-risk” standard is applicable in this case.
In order to conclude that the increased-risk standard applies, the court today cate *940 gorizes an injury resulting from a lightning strike as not being an accidental injury. Such an approach, in my view, rejects the plain meaning of the word “accident” (see IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992) (words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning)), not to mention the definition of that word in § 25-5-1(7), Ala.Code 1975. That Code section states:
“Accident. That term, as used in the phrases ‘personal injuries due to accident’ or ‘injuries or death caused by accident’ shall be construed to mean an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body or damage to an artificial member of the body by accidental means.”
The reason the court today ignores the meaning of the word “accident” apparently derives from the fact that the opinion of our Supreme Court in Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala.1996), focuses on the appropriate standard for proving “legal causation” in a case in which the employee’s injury is termed “nonacci-dental.” The Court in Ex parte Trinity Industries then held that the proper legal causation standard to be applied in such a case is whether the employee’s duties “exposed [the employee] to a danger or risk materially in excess of that to which people are normally exposed in their everyday lives.” 680 So.2d at 267.
I believe that our court today correctly senses that the “increased-risk” test applied in Ex parte Trinity Industries is likewise the appropriate standard to be applied in the present case. The problem for the majority, however, is that the Ex parte Trinity Industries opinion focuses on an application of this increased-risk test to what that court terms “nonaccidental” injuries. I do not read Ex parte Trinity Industries, however, as foreclosing the application of this test, in an appropriate case, to an “accidental” injury.[5]
The reluctance of this court today to apply the increased-risk standard to the injury at issue in the event that injury is deemed to be an “accidental” injury appears to stem, as much as anything, from note 3 in the Ex parte Trinity Industries opinion. That note and the accompanying text reads as follows:
“Determining whether a causal relationship has been established between the performance of the claimant’s duties as an employee and the complained-of injury is especially difficult and troublesome when the complained-of injury was not produced by some sudden and traumatic external event.[3] For simplicity, we will refer to such events as ‘nonaccidental’ injuries.”
680 So.2d at 266 (emphasis added).[6]
It appears that this court today views note 3 of the Ex Parte Trinity Industries, Inc. *941 opinion as stating that legal causation is never at issue in a case involving what the Supreme Court colloquially refers to as an “accident.” This view, combined with the fact that following note 3 the Supreme Court’s opinion focuses at length on the increased-risk test as the appropriate standard for proving legal causation where there has been what the Supreme Court refers to as a “nonaccidental” injury, appears to lead this court to conclude that an injury must be “nonaccidental” in order for the increased-risk standard to be applicable. I believe this conclusion overgeneralizes based on note 3 and draws an absolute rule that was never intended, thereby forcing this court to call an injury resulting from a lightning strike a “nonaccidental injury” in order to take advantage of the increased-risk test.
It is true that in most cases involving a “sudden and traumatic external event” occurring while an employee is at work, as described in note 3 in Ex parte Trinity Industries, the employee will fail to make a prima facie case for compensation only if he or she is unable to show “medical causation.” This is so, however, not because legal causation is not required, but because the legal causal relationship between the employment and the injury — i.e., that the employment set in motion the approximate cause of the injury — is usually beyond question in such cases. (The examples of being struck by a falling hammer and slipping off a ladder given in note 3 are excellent examples.) I do not believe that the Ex parte Trinity Industries Court intended, however, to say that in every case involving a sudden and traumatic external event, the plaintiff will be able to recover so long as he or she introduces adequate evidence of only medical causation. If this were true, an employee would be entitled to compensation and medical benefits under our workers’ compensation act even when the proximate cause of his or her injury is an event set in motion by some agency other than the employer (e.g., an “act of God” or the act of a third party, where the employment has not increased the employee’s risk of exposure to such act).[7]
I find it helpful to maintain a focus on the following statement of the Supreme Court in Ex parte Trinity Industries:
*942 “Whether an accidental injury ‘arises out of the claimant’s employment is basically a question of whether there is a causal relationship between the claimant’s performance of his or her duties as an employee and the complained-of injury.”
680 So.2d at 266 (emphasis added). Even more helpful is the statement made by the Ex parte Trinity Industries Court in note 2 of its opinion:
“ ‘For an accident to “arise out of employment” the employment must have been the cause and source of the accident and the resultant injuries must be traceable to a proximate cause set in motion by the employment, not by some other agency.’ ”
Id. at 265 n. 2 (emphasis added) (quoting Alabama Textile Prods. Corp. v. Grantham, 263 Ala. 179, 183, 82 So.2d 204, 207 (1955)).
With these basic precepts in mind, I would analyze the case before us as follows: (1) the employee’s injury from the unexpected and unforeseen lightning strike was unquestionably an “accidental injury”; and (2) the employee’s injury was not an injury resulting from an accident traceable to a proximate cause “set in motion by the employment,” but rather was traceable to a proximate cause set in motion “by some other agency,” i.e., an act of God in the form of a lightning strike. Had the employee in the present case proven that the employer required him to engage in conduct or perform duties that put him at a meaningfully increased risk of a lightning strike compared to that to which people are commonly exposed, the employee’s accident could have been compensable. The employee did not prove that in the present case.
In American Fuel & Clay Products Co. v. Gilbert, 221 Ala. 44, 127 So. 540 (1930), our Supreme Court applied an increased-risk standard to an employee’s injuries caused by a lightening strike:
“ ‘[I]f the position which the workman must necessarily occupy in connection with his work results in excessive exposure to the common risk ... or if the continuity or exceptional amount of exposure aggravates the common risk ... then it is open to conclude that the accident did not arise out of the common risk, but out of the employment.’ ”
221 Ala. at 46, 127 So. at 541 (quoting Cudahy Packing Co. v. Parramore, 263 U.S. 418, 425, 44 S.Ct. 153, 68 L.Ed. 366 (1923)). In so doing, the Court consistently referred to the employee’s “accident.” I believe we can do the same in the present case.

. Indeed, Ex parte Trinity Industries itself explained that the early use of this increased-risk test in Pow v. Southern Construction Co., 235 Ala. 580, 288 So. 288 (1938), came in a case in which the Supreme Court treated a death from pneumonia resulting from an em-

"3An employee claiming to have been injured by a sudden and traumatic external event (an 'accident' in the colloquial sense, e.g., being struck by a falling hammer on a construction site or slipping off a ladder) need only produce substantial evidence tending to show that the alleged 'accident' occurred and tending to establish 'medical causation,' by demonstrating that the ‘accident’ was a contributing cause of the complained-of injuries and complications.” ployee's being forced to work outside in very wet conditions as an "accident” arising out of the employment. 680 So.2d at 266.

. I would note preliminarily that the Supreme court stated that it chose to use the terms *941 "nonaccidental” and “accidental” merely for the sake of "simplicity” and to further an understanding in a "colloquial sense” of its analysis. I do not read the Supreme Court’s opinion, in choosing to use these terms, as implying that the injury at issue in Ex parte Trinity Industries did not fall within the statutory definition of "accident” in § 25-5-1(7), which as noted above applies to an "unexpected or unforeseen event, happening suddenly and violently,” and therefore is not restricted to events caused by the traumatic application of external force to the human body.

. To give perhaps the most unlikely of examples, but perhaps the most illustrative, note 3 in Ex parte Trinity Industries, if applied literally and absolutely, would mean that an employee struck suddenly by an unexpected and unforeseen meteorite while engaged in his normal work would be entitled to workers' compensation benefits even though the risk of being hit by a meteorite certainly is not a "job-related risk.” Such a result would be just as objectionable as a so-called "nonacci-dental” injury (i.e., one not resulting from an external event) being compensable merely because it occurred in the workplace, a result rejected by the Ex parte Trinity Industries court:
"Without a 'legal causation’ standard, a person who becomes ill or dies because of a natural cause, such as an aneurysm or ... a diabetic comma, unrelated to any job-related risk, would be able to recover under our workers' compensation statute merely because he or she was lucky enough to have the disabling event resulting from that natural cause occur at the place of employment. ... Such a result was not intended by the legislature when it enacted our workers’ compensation law.”
680 So.2d at 267 (emphasis added).