MRS. BERTA M. BOWEN, a widow mother of J. W. Bowen, deceased; MABEL BOWEN and ELGA BOWEN, sisters of N. W. Bowen, deceased, v. J. VELMA KEEN, an individual trading and doing business as Pendleton Grain & Provision Company; THE FLORIDA INDUSTRIAL COMMISSION.

17 So. (2nd) 706                                    .January Term, 1944
February 4, 1944                                        En Banc
Rehearing Denied April 18, 1944

*J. Lewis Hall, W. K. Whitfield, B. K. Roberts,* and *Rodney L. Durrance,* for appellants.

*Caldwell & Parker, Millard Caldwell, Julius F. Parker* and *Leo L. Foster,* for appellees.

CHAPMAN, J.:

This is a workmen's compensation case originating as a judicial case in the Circuit Court of Leon County, Florida. The record reflects the following material facts. J. W. Bowen, a young man, around 7:00 o'clock A.M., on February 25, 1942, when traveling or walking a highway from his home on the outskirts of Tallahassee to the place of business of the Pendleton Grain & Provision Company, his employer, was struck and killed by a motor vehicle. When he met his death his compensation was $13.85 per week and his employment had existed from January 5, 1942, until the date of his death. His mother and a sister were shown as dependents.

Some of the duties of the deceased's employment were to solicit orders for his employer; sell feed and other articles of merchandise for sale around the business; he delivered feed to the various customers of his employer, using the latter's truck; when delivering merchandise and while away from the place of business, he solicited business from the several customers for his employer; he was required to begin work around 8:00 o'clock each morning, except when discharging the duties of caring for an incubator for hatching chickens, operated in the employer's business; the deceased rendered twenty-four hour service for his employer when caring for the incubator and had his meals there and slept about the business; on the night of February 23rd-24th, 1942, he was on twenty-four hour service incident to the incubator, and when leaving the business around 9:30 or 10:00 P.M. on the 24th of February, 1942, his employer directed that he return to the place of business early next morning, obtain the truck so that two trips in behalf of his employer could be made from Tallahassee to Thomasville on the 25th of February, when he lost his life. Pursuant to the instructions of his employer, he arose approximately an hour earlier, left his home, and was on the way to obtain the truck and go to Thomasville

when struck down and killed around 7:00 o'clock on the highway by a truck between the deceased's home and his employer's place of business.

It was the view, and holding of the lower court, that the deceased was only on his way to work when he met his death; the fact that he had been instructed by his employer the previous evening "to come earlier than usual" did not subject the deceased to any greater hazards than ordinarily attended when on the way to work from his home because no duties or obligations in behalf of his employer arose until he reached the employer's place of business and for these several reasons the death of the employee, as a matter of law, did not arise out of and within the scope of the said employment.

Section 440.09, Fla. Stats. 1941, provides that compensation shall be payable under said Chapter in respect of disability or death resulting from an injury arising out of and in the course of the employment. We have, since the enactment of the statute, *supra* in construing the statute, defined the scope of employment as a compensable and considered facts on appeal here which we held were not compensable or within the statute.

In case of Fidelity & Casualty Co. of New York v. Moore, 143 Fla. 103, 196 So. 495, we had before us the question of what was meant by the terms of the statute, *supra,* and to make an injury compensable "it must arise out of and in the course of one's employment," and we said:

"The cases generally hold that for an injury to arise out of and in the course of one's employment, there must be some casual connection between the injury and the employment or it must have had its origin in some risk incident to or connected with the employment or that it flowed from it as a natural consequence. Another definition widely approved is that the injury must occur within the period of the employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental to it."

We held therein that no recovery could be had because the employee was not responding to a business call of his em-

ployer but engaged in a personal mission when the injury and death occurred.

In the case of Sweat v. Allen, 145 Fla. 733, 200 So. 348, we held that, as a general rule, injuries sustained by employees when going to or returning from their *regular* places of work are not deemed to arise out of and in the course of their employment, but exceptions have been engrafted upon the rule and the criterion of its applicability depends on the nature and circumstances of the particular employment and no exact formula could be laid down as a guide for all the cases. We held that the facts in Sweat v. Allen, *supra,* were controlled by the exception to the general rule above stated. Counsel for appellant contend that the facts here involved fall within and are controlled by the exception to the general rule laid down in Sweat v. Allen, while appellee contends that the general rule expressed therein should be applied as was done by the lower court and similar conclusions reached.

Whether or not an employee, in going to or from the place of his employment, is in the line of his employment will depend largely on the particular facts and circumstances of each case. There must necessarily be a line beyond which the liability of an employer cannot continue, and the question as to where that line is to be drawn has been held to be usually one of fact. See Schneider on Workmen's Compensation Law, Vol. 1 (2nd Ed.), par. 266, p. 776.

Par. 269, Schneider, *supra,* page 799, the rule is thusly stated: "Going To and From Work Where Employment Is Not Limited to Fixed Hours.—An employee whose hours of work were not limited to any definite time was called upon to convey other employees to an outside job, and while returning his auto skidded and turned over and he was killed. The court, in holding that the accident arose 'out of and in the course of the employment,' said: 'When a member of the firm directed Horace Rogers to take Mr. Walke to the Dolan camp, it was his duty to obey. There was no obligation resting on him to inquire whether the performance of that duty would inure to the benefit of the firm. That question was no concern of his. It would be an unjust and unreasonable rule that would have required him to decide that question at his

peril. The presumption is that the master knows his own business, and it is the exclusive province of the master to determine questions of that character for himself.' "

The case of Altman v. Kaufmann Realty Co., 110 Pa. Super. Ct. 178, 167 Atl. 394, involved an injury to an employee. Altman occupied the position of all-round man and was subject to call by his employer at any hour of the day or night to perform special missions on behalf of his employer. The employer called Altman on August 30, 1930, and instructed him to do certain work on September 2nd. Altman left home on September 2nd earlier than his usual custom to look after a special mission for his employer and as he stepped off a trolley was struck and killed by an automobile. The court held that he was killed while actually engaged in the furtherance of his employer's business.

Industrial Commission of Ohio v. Murphy, 50 Ohio 148, 197 N.E. 505, involved the claim of an employee for compensation. Murphy worked in a funeral home, trimmed caskets, acted as houseman, and went to homes and hospitals in connection with his employer's business. He lived some distance from the place of business and directions to him were given over the telephone. He had no regular hours of employment, but was subject to call. He was called over the phone and directed to report at once. He took a trolley and on leaving it was hit by a motor car. It was contended that the actual employment did not begin until Murphy reached the funeral home. The court held that this was not "a coming and going case" where the employee has a fixed time to appear at his employer's place of business; the employee, when carrying out the directions of the employer received over the phone by reporting at the funeral home, was promoting the employer's interest; he was not going to the regular place of work at a regular time. He was not permitted to dispose of his time as he saw fit until a regular working hour at a regular place of employment; he could not engage in any other enterprise after receiving directions; he could not go to any other place but was commanded to report at the funeral home. .

Voehl v. Indemnity Ins. Co., 288 U. S. 162, 77 L. Ed. 676, 53 S. Ct. 380, 87 A.L.R. 245, involved the compensability of

an injury received by an employee sustained while on his way to work. Voehl's regular hours were from 7:30 A.M. to 5:30 P.M., and he was on duty all the time "on our call." The employer maintained a 24-hour service and Voehl was subject to call. It was Voehl's custom on each Sunday to go to his employer's place of business for the purpose of clearing it of debris in accordance with his duties of employment. His compensation was so much per hour from the time he left home until his return, with an allowance for transportation. He was injured in an automobile collision when traveling on Sunday from his home to his employer's place of business.

The Court, in sustaining Voehl's claim, in part, said (text 87 A.L.R. 249):

". . . The general rule is that injuries sustained by employees when going to or returning from their regular place of work are not deemed to arise out of and in the course of their employment. Ordinarily the hazards they encounter in such journeys are not incident to the employer's business. But this general rule is subject to exceptions which depend upon the nature and circumstances of the particular employment. 'No exact formula can be laid down which will automatically solve every case.' Cudahy Packing Co. v. Parramore, 26s U. S. 418, 424, 68 L. Ed. 366, 369, 44 S. Ct. 153, 30 A.L.R. 532. See also Bountiful Brick Co. v. Giles, 276 U. S. 154, 158, 72 L. Ed. 507, 509, 48 S. Ct. 221, 66 A.L.R. 1402. While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. An agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service and hence, within the purview of the Compensation Act.'

The deceased was employed by the Pendleton Grain & Provision Company as an "all-round man." The duties of

employment were broad and varied. He rendered 24 hour service when operating the hatchery. It is reasonable to assume that directions were given by the employer to the "all-round man" when feed or other articles of merchandise were to be delivered, or the sale of articles to the customers of the decedent's employer was required, or the employee when driving the employer's truck. The decedent apparently had no daily number of hours of employment, like going on duty at the employer's place of business at 8:00 A.M., and leaving at 6:00 P.M. It is true that 8:00 o'clock with exceptions, was the etablished hour. The duties of employment of the deceased to the employer in the case at bar, fall within the exception of the general rule, to the effect that injuries sustained by an employee when going to or returning from their regular places of work are not deemed to arise out of and in the course of their employment. The duties of employment made him subject to call at any time during the 24 hours of the day.

On the night of February 24, 1942, prior to Bowen's leaving his employer's place of business, he was instructed by his employer on the following day to make two trips from Tallahassee, Florida, to Thomasville, Georgia, and return, using the employer's truck. If the two trips were to be completed in a single day, an early start would be necessary. Full and adequate instructions for the day's work was given by the employer and received by the employee on the night of the 24th of February, inclusive of the place to find or get the truck. Pursuant to these instructions of the employer, the employee arose early and left his home for the purpose of carrying out the employer's instructions and to facilitate or advance the business interests of his employer. He had started the day's work by leaving his home early, as requested, and was traveling the highway over the nearest and most practical route to get or obtain the truck of his master at the place where instructed to find the same when the employee met his death.

While it may be true that the instructions given by the employer to his employee on the previous night "to come to work earlier," standing alone as a single instruction as to the

day's work, may not have subjected the employee to greater or different hazards of risk than ordinarily when beginning work at 8:00 o'clock, but the instructions were more than "to come to work earlier." The employee was subject to call, as clearly shown by the testimony, and having been fully instructed for the day's work on the previous night and being killed while carrying out the instructions, when aiding, advancing and facilitating the business interests of his employer, are facts sufficient in law for us to hold that the death of the employee, under the peculiar circumstances of this case, arose out of and in the course of his employment. See Cudahy Packing Co. v. Parramore, 263 U. S. 418, 68 L. Ed. 366, 44 S. Ct. 153, 30 A.L.R. 532; Bountiful Brick Co. v. Giles, 276 U. S. 154, 72 L. Ed. 507, 48 S. Ct. 221, 66 A.L.R. 1402; Mitchell v. Ball Bros. Co. 97 Ind. App. 642, 186 N.E. 900; Thompson v. Industrial Commission of Utah, 83 Utah 171, 27 P. (2nd) 436; Olson v. Eck's Homemade Sausage Co., 194 Minn. 458, 261 N. W. 3.

When counsel for the parties were taking evidence before the deputy commissioner in the case at bar, objections to the admissibility of designated testimony and motions to strike the same were made. These objections were directed to evidence on the part of the deceased relatives concerning hours of work, duties, compensation or the terms of employment between the employer and the employee. It was suggested that much of the testimony was hearsay. The objections were made in the circuit court and renewed here. The lower court obviously held that the several objections were without merit. Obviously these challenged facts clearly could have been disputed or contradicted by calling the employer or his manager to the witness stand having knowledge of these transactions, but this was not done.

We are requested to apply the rule of hearsay evidence obtaining in common law to the facts involved in this Workmen's Compensation case. It does not appear that the hearsay facts as testified to were not corroborated by other admissible testimony. See Schneider on Workmen's Compensation Law, Vol. 2 (2nd) par. 508, p. 1757. This ruling of the lower court is affirmed. That part of the order or decree

holding that the death of the employee did not arise out of and in the course of his employment is hereby reversed for further proceedings not inconsistent with this opinion. The decree or order appealed from is affirmed in part and reversed in part.

It is so ordered.

BUFORD, C. J., BROWN and ADAMS, JJ., concur.

TERRELL, THOMAS and SEBRING, JJ., dissent.

ON PETITION FOR REHEARING

BROWN, J.:

On petition for rehearing, it is contended that the terms of employment of J. W. Bowen by appellee, and his duties thereunder were proven, if at all, by mere heresay testimony. The record shows that Cecil Bowen, brother of the deceased, testified that he was present when his brother was employed by Mr. Ott, the then general manager of the business of the appellee, Pendleton Grain & Provision Company; that Mr. Ott offered the position to him, which he declined, as he already had a similar position with another concern, and that his brother, who accompanied him, was then, in the presence of witness, offered the same job, and accepted it; that he heard Mr. Ott specify in full what his brother's duties in such position would be, which were to act as a clerk, drive a truck, deliver feed, sell chicks from the hatchery, take orders for feed and operate the chicken hatchery whenever directed to do so; that the work in reference to the hatchery which was kept in continuous operation, required keeping the incubators heated at a certain temperature and was a 24 hour job; that when his brother was called on to run the hatchery his hours of work were unlimited and he was subject to call for such work at any time; that when he was not working on the hatchery, he usually went to work about 8 A.M.; that sometimes he had to work very late at night, and sometimes had to go to work very early in the mornings. This was not hearsay testimony. It was based on what the manager said when he employed his brother and what he knew of his own knowledge. He also testified that on the morning he was killed his brother left home about 7 A.M.

He also testified that when his brother came home the night before he heard him tell his mother that he wanted her to get him off early the next morning, as he was to make two trips to Thomasville, Georgia, and that when he left the next morning he was on his way to Thomasville, though he had to go by the store to get the truck.

Mrs. Bowen, the mother of the deceased, testified without objection that on Monday night her son worked at the hatchery, and that when he came home on Tuesday night, being the night before he was killed, he told her to get him off early the next morning, as he had been told to get up early and make two trips to Thomasville, and that she did get him off the next morning before 7 o'clock. This was February 25, 1942, and we can take judicial notice that on that date 7 o'clock, E. S. time, in Tallahassee, is nearly an hour before daybreak.

While no objection was made to the above testimony by Mrs. Bowen, we think it was admissible. The rule is quite generally recognized that the statements of a deceased person as to the purpose and destination of a trip or journey he is about to make are admissible. Many courts hold that such statements are a part of the res gestae. See 3 Jones on Evidence, Section 1120. This question is thoroughly treated in an annotation in 113 A.L.R. 268, et seq., and beginning on page 300 of the same annotation a number of cases are cited wherein such testimony was held admissible in actions brought under workmen's compensation or employers' liability statutes.

The general subject is very well treated in 31 C.J.S., page 988-9, sections 239-240, and 32 C.J.S., pages 19 to 54, sections 403-421, but section 412, page 35, 32 C.J.S. is quite apt here. It says that "a declaration of fact which, although antecedent in point of time, is preliminary or immediately preparatory to the main fact may be received where it tends to illustrate or give character to the act in question." See also 22 C.J., 260. Of course, in order for a statement of this nature to be admissible as a part of the res gestae it must be a spontaneous utterance of the mind while under the influence of the transaction or event. 32 C.J.S., 45. In 20 Am. Jur.,

578, it is said: "Statements by a person since deceased as to the purpose or destination of a trip he is about to make may be proved in many instances as part of the res gestae, when properly connected with the act of departure."

Tested by the applicable principles of law, the testimony of the mother and brother of the deceased, above referred to, was admissible.

Now, as the rule which exempts an employer from liability under workmen's compensation acts when the employee is going to and from his regular work. Our view is that this rule applies in general to employees who have fairly regular or fixed hours of work; where they usually go to work at a certain time and quit at a certain time; or where they have at least fairly regular hours of work. Outside of those hours, they are complete masters of their time. But, as stated in our original opinion, the evidence in this case does not show that this young man had any fixed or regular hours of work, either as to the time he should be at the store or warehouse in the mornings or when he should leave in the afternoon or evenings. He frequently had to work very late at night without any extra pay, and when he was running the hatchery he had to stay at the warehouse night and day. Appellee's counsel very fairly stated in their brief that:

"He was a truck-driver and general assistant in the warehouse and in field work. The whole period of time was not required for his duties and did not cover all twenty-four hours a day every day in the week; it covered only the hours in the day that were devoted to the activities in which he was engaged."

In the petition for rehearing, some complaint is made because in our original opinion we said that appellees could have contradicted the alleged hearsay testimony of Cecil Bowen as to the terms of employment by calling the employer or manager to the stand, but that this was not done. Counsel say, and we do not doubt them in the slightest degree, that the owner of the business knew nothing about any such agreement and that the then manager had left his employe and his whereabouts were unknown. So the state-

ment in our opinion which is now objected to, while based on a natural inference, is withdrawn.

The petition for rehearing also calls our attention to section 90.05, F.S. 1941, but we do not think that statute is applicable in this case.

Taking the admissible testimony as a whole, we reach the same conclusion arrived at in our original opinion to the effect that the deceased had no fixed or regular hours of work and was really subject to call; that while he usually went to his work about 8 A.M., he was, at the time he was killed, carrying out the orders of his employer, in furtherance of a mission in his employer's interest, which orders required him to leave his home at a much earlier hour than usual, and that when he was accidentally run over and killed he was actually engaged in his employer's business. Therefore, the accident which caused young Bowen's death "arose out of and in the course of his employment."

Petition for rehearing denied.

BUFORD, C.J., CHAPMAN and ADAMS, JJ., concur.

TERRELL, THOMAS and SEBRING, JJ., dissent.