**GERTRUDE NEUMAN v. SHELBOURNE GRAND HOTEL, UNITED STATES FIDELITY & GUARANTY COMPANY, and FLORIDA INDUSTRIAL COMMISSION.**

. 20 So. (2nd) 677                              January Term, 1945
January 23, 1945                                     En Banc
Rehearing denied February 23, 1945

*Harry A. Gair,* (New York, N. Y.), *Rosenhouse & Rosenhouse* and *Julius F. Parker* and *Millard Caldwell* of *Caldwell & Parker,* for appellant.

*Blackwell, Walker & Gray,* for appellees.

BROWN, J.:

This is an appeal from the judgment of the Circuit Court in and for Dade County affirming the order of the Florida Industrial Commission denying appellant a compensation award for injuries sustained while an employee of the Floridan Hotel in Miami Beach, Florida, which Hotel is owned and operated by the appellee, Shelbourne Grand Hotel.

The deputy commissioner found that the claimant, appellant here, was an employee of the Hotel at the time of the accident, and that she sustained a serious and disabling injury by reason of said accident, but he further found that the accident did not arise out of and in the course of her employment.

The testimony showed that claimant had been a hostess for the Floridan Hotel for nine years and that her room in the hotel and her meals were furnished her in part consideration for her services. Her duties included the meeting of newly arrived guests, introducing guests to each other, arranging card games and other social activities between the guests, taking care of patrons who were ill and getting a doctor for them when necessary, acting as a companion to those of the guests that desired one, creating conversation at the dining table, arranging parties, and generally seeing to it that the guests of the hotel had all the social activities as well as consideration for their welfare and comfort that first class tourist hotels generally afford. She also did shopping for patrons of the hotel who would ask for that accommodation. In order to carry out her duties her room was furnished with a telephone just as the guests' rooms were, and her services as a hostess were made available to the guests whenever needed. She had frequent calls over the telephone, some times late at night, and had no regular hours of work but was subject to call at any time. As to the accident, and the way it happened, claimant testified as follows:

"Q. And what happened? A. I was shopping for some guests in the afternoon and I came back to my hotel and I was going to take a shower, which I always do—a bath, which I always do before I get dressed to do the rest of my duties. The operator called me and told me that one of the guests didn't feel good in a certain room and I should please go there, which I always do.

"Q. The operator of the hotel called you? A. Yes.

"Q. And told you to go take care of another guest? A. That wasn't feeling well.

"Q. You had done that before? A. Oh yes; that was one of my duties.

"Q. Then what happened? A. I was all undressed, so I figured instead of taking a bath I would take a shower. I took a shower. While I was under the shower the telephone rang and as I turned around to get out in a hurry to answer it I slipped. There was no mat on the tub.

"Q. You fell? A. I fell.

"Q. And you hurt yourself? A. That's right."

On cross examination her testimony on this point was practically the same, except that she stated that she did not know who was calling the second time, as she could not get the phone but she thought the operator was probably calling her again.

Part of her testimony on cross examination was as follows:

"Q. Then as you completed your bath the phone rang again? A. As I turned off the shower the phone rang; as I turned around to get a towel that is when I slipped.

"Q. On the second phone call. A. Yes. The towel was on the end of the tub by the bath there and there was a basin right next to the tub unless you come down on - - I guess that's where I must have hurt myself so badly, I don't remember after that very much."

If this testimony was true, claimant was entitled to an award of compensation. It was her duty to answer phone calls when she was in her room and when the phone rang the

second time and she turned to answer it, and while so doing slipped and fell in the bath tub, this accident certainly arose out of and in the course of her employment. But the deputy commissioner did not credit this testimony of the claimant, the appellant here, because some time before this testimony was given, she had made certain statements in which she did not mention the telephone calls. She had told Dr. Jenkins, the hotel physician who was called to her aid almost immediately after the accident that she had slipped and fallen while taking a shower and that she had made similar statements to Dr. D. Ward White and Dr. Shevlin. These statements were made on March 21 and 22 and May 18 of 1942, and she gave the adjuster for the carrier a few days after the accident happened a written statement in which she again said that:

"I was taking a shower in my bath room. The shower comes into the tub and I was standing in the tub under the shower when I slipped and fell. There was no mat in the tub."

Several months after the accident, after she had been in hospitals in Miami Beach and in New York, the latter being her home State, she filed a claim in the Department of Labor of the State of New York and advised the Florida Industrial Commission that she was doing so, due to the doubt as to the jurisdiction, but that she wished to preserve her right under the Florida Compensation Act. In the claim filed in New York in response to one of the questions in the questionnaire, 'How did the accident happen?" Claimant wrote:

"Took shower; no mat in tub. Slipped and fell, sustaining severe injuries."

After reciting the above matters, the deputy commissioner stated his conclusion as follows:

"Thus, on five different occasions before trial, claimant clearly reported and said that she fell while taking a shower. At the first hearing, she gave a different version testifying that she fell after taking a shower and while hurrying to answer the telephone in her room.

"After consideration of all the evidence and testimony relating to the aforesaid question two, the undersigned deputy commissioner is of the opinion, and so finds, that claimant fell while taking a shower and not while she was

proceeding to answer the telephone or making preparation therefor."

It will be noted that the deputy commissioner does not take the position that her testimony on the trial was in contradiction of her previous statements to the doctors and the insurance adjuster. His position seems to have been that because she testified on the trial to certain details connected with the accident which she did not theretofore mention, her testimony as to these additional details was not worthy of belief.

Doubtless the average employee thinks that if he is accidentally injured during the time of his employment he is entitled to workmen's compensation, and that all he or she has to do is to state what the accident actually was and the immediate injuries sustained. We see no real inconsistency in the various statements made by the claimant. It is true in one place she said she fell while taking a shower and in another she said she fell immediately after turning off the shower, and in her first statement she said that she fell in the shower. But when on the hearing she was asked questions as to the attendant circumstances, her testimony as to the telephone calls and her effort to answer the second telephone call, by turning off the shower and hurrying to answer the call, was brought out. It was in the nature of additional and not contradictory testimony.

Dr. D. Ward White was called as a witness by the commissioner. He had been called to attend Mrs. Neuman by the St. Francis Hospital on March 22, the day after her injuries, and his treatment consisted of a series of operations, reductions, application casts, and medical treatment. The hospital records in Miami Beach and in New York were introduced in evidence and are very voluminous. They indicate that the claimant was very seriously injured and was in great agony for some time after the accident. Dr. White testified that claimant "gave a history of having slipped and fallen while taking a shower, inflicting injuries, such as a fracture of the right radius and subluxation of the cervical vertebrae." Dr. White testified that she told him that she had turned quickly in the shower and slipped and fell, but that what made her

turn quickly he did not know and was never told. In answer to the question "Are you positive that she did not tell you about the telephone ringing?" He answered: "I am not positive that she did or didn't, I don't have any recollection of that incident," but he thought if she had mentioned it he would have remembered it.

Dr. Jenkins, the house physician, of the Hotel Floridan, above referred to, testified that he was called by some one to go to Mrs. Neuman's room in the later afternoon of March 21, 1942; that he knew Mrs. Neuman was the hotel's hostess; that she said she had slipped while taking a shower; that he found that she was severely injured, and "thinking that it was a compensation case" he called an ambulance and sent her to St. Francis hospital; that he phoned the hospital to take her in, and suggested surgical consultation.

It is perfectly plain from the evidence in this case that it was the appellant's duty to respond to telephone calls when such calls came from the operator in the hotel service or directly from guests, whether these calls came during the day or at night. So, if appellant slipped in the bath tub while endeavoring to answer a telephone call the accident and resulting injury arose out of and in the course of her employment, and she would be entitled to an award of compensation. This would follow from the language of the statute itself, without citing any further authorities. See Section 440.09 F.S. 1941, F.S.A. But counsel for appellant also argue that aside from her duty as hotel hostess to answer telephone calls appellant was entitled to an award of compensation upon the ground that the evidence shows that it was her duty to keep neat and well groomed, and that she was really engaged in the line of her duty when she was taking a bath in her own room in the hotel, where she was subject to call at any time.

In support of this argument counsel for appellant cite the case of Saxton v. Public Service Commission of the City of New York, 180 App. Div. 111, (N.Y.), but the facts in that case are not completely analogous to those here. In that case the duties of the employee, a subway underground worker, were such that he necessarily became dirty and filthy during his work and it was absolutely necessary for him to take a

bath before leaving his place of employment in the subway and going to some further work in the field office. He had a fall while taking a shower bath under the conditions named, and the court properly found that it was his duty to his employer to take the bath, which action on his part was incidental to his employment. In the case at bar while it was the appellant's custom to take a bath before dinner every evening, and while it was her duty to keep neat and well groomed, we do not think the evidence here would justify us in going so far as to hold that when the appellant was taking this particular bath she was necessarily acting within the line and scope of her duty to her employer. But we recognize that this is a close question on this evidence.

Counsel also cite the recent case of Bowen v. Keen, 154 Fla. 161, 17 So. (2nd) 706, but we hardly think that case is directly in point here, though it is somewhat persuasive in that in the cited case, as here, the injured employee had no regular hours of work and was subject to call at any time. They also cite the case of Sweat v. Allen, 145 Fla. 732, 200 So. 348. But neither does that case, as we view it, afford a solution to the exact question contended for here.

In the order and opinion of the deputy commissioner, which became the order of the full commission, it is said:

"The leading case, on the controlling question of law in this cause, is the case of Hall v. City of New York, et al., 258 App. Div. 830, 150 N.Y.S. 672, affirmed 282 N. Y. 708, 26 N. E. (2nd) 822, wherein it was held:

" 'A nurse employed and living in city hospital, who was injured by slipping in bathtub while taking a bath, was not entitled to disability compensation.' "

As we view it, appellant's right to recover should be based upon her own uncontradicted testimony that at the time she slipped and fell in the bath tub she was endeavoring to answer a telephone call, within the line and scope of her duty as hotel hostess. It is with some reluctance and diffidence that we reach a different conclusion on the evidence from that reached by the able deputy commissioner and the three circuit judges of the Eleventh Judicial Circuit, who affirmed his order, but after carefully reviewing this record

we think they erred in holding that the claimant's uncontradicted testimony with respect to the telephone calls should not be credited. Our conclusion we think is reinforced by the statutory presumption contained in Section 440.26 FS 1941 F.S.A. which, so far as applicable here, reads as follows:

"In any proceeding for the enforcement of a claim for compensation under this Chapter it shall be presumed, in the absence of the substantial evidence to the contrary,— (1) that the claim comes within the provisions of this Chapter."

The effect of this statutory provision was construed in Fidelity & Casualty Co. v. Moore, 143 Fla. 103, 196 So. 495, and Sims Tire Service v. Parker, 146 Fla. 23, 200 So. 524.

For the reasons above pointed out the judgment appealed from is hereby reversed and the cause remanded for further proceedings consistent with the foregoing opinion.

Reversed and remanded.

CHAPMAN, C. J., TERRELL, BUFORD, ADAMS and SEBRING, JJ., concur.

THOMAS, J., dissents.