McCORD, GUYTE P., Jr., Circuit Judge.
Petitioner, a citrus grove worker, after reporting to work on July 21, 1962, was injured in an automobile accident when he lost control of his car while driving alone to a citrus grove assigned to him and his crew for spraying. The claim was controverted by respondent, employer-carrier, on grounds that the cause of the accident was intoxication of petitioner, and that the accident did not arise out of and in the course of his employment. The deputy commissioner found there was insufficient evidence to sustain the allegation of intoxication as a cause, but also found as follows:
“The employer furnished transportation of all employees and the employer is not liable for any other travel to and from work other than that provided for the employees, unless an employee had specific authorization and instruction to use his transportation, which the employee did not have.”
The deputy held that the accident did not arise out of and in the course of petitioner’s employment. The full commission affirmed on review.
Whether or not an injury is one arising out of and in the course of employment is governed by the particular circumstances of each accident. As this Court stated in Fidelity & Casualty Co. of New York v. Moore, 143 Fla. 103; 196 So. 495, and in Bowen v. Keen, 154 Fla. 161; 17 So.2d 706:
“The cases generally hold that for an injury to arise out of and in the course of one’s employment, there must be some causal connection between the injury and the employment or it must have had its origin in some risk incident to or connected with the employment or that it flowed from it as a natural consequence. Another definition widely approved is that the injury must occur within the period of the employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental to it.”
See also 35 Fla.Jur. Workmen’s Compensation, § 57.
The core of this case is the question of whether or not the petitioner had express or implied authority to drive his own car to the grove on the morning of the accident, other transportation furnished by respondent employer being available to him. The answer, of course, is determined by the evidence in the cause. The deputy commissioner after hearing all of the testimony on this question and judging the credibility of the witnesses who testified before him decided such issue against petitioner’s contention.
From the evidence it appears that petitioner had been employed by respondent for a considerable period of time prior to the accident working with a grove care-taking crew. His job in the grove was that of sprayer operator, driving the tractor that pulled the spraying machine. Respondent employer’s place in Winter Haven, where all of the caretaking equipment and materials were kept, was commonly called the barn, and petitioner and the spray crew were required to report to work at the barn at 7:00 o’clock in the morning where they would assemble their equipment and materials, load them as well as themselves on a truck of respondent employer and drive to the grove where *195 they were to work that day. Their pay day began upon reporting for work at the barn.
Petitioner and his crew knocked off work early on the afternoon of the day prior to the accident due to rain, and petitioner and his foreman proceeded to get drunk on whiskey. Subsequently, petitioner passed out on the floor of his home, where he remained all night, and the foreman passed out on the employer’s office floor. The foreman was subsequently discharged for driving a company truck against his employer’s instructions during such drinking spree. He was not an employee of respondent employer at the time of the hearing before the deputy commissioner.
When petitioner awoke the next morning with a rough hangover, he and his wife drove to a friend’s house where he borrowed $35.00 and then went to a filling station where he found his foreman with whom he had been drinking the night before. He told the foreman that he had to have $50.00 from the company, and the foreman told him that he (petitioner) would have to see Mr. Bailey, the supervisor. Petitioner and his wife testified that since petitioner had to go back by his house to change into his work clothes the foreman told petitioner that he would send the crew on out to the grove and petitioner could go out in his own car. The foreman on direct examination testified positively that he told petitioner that petitioner would have to see Mr. Bailey about taking his own car, and he (the foreman) would not give petitioner his consent to take his own car. He further testified that he told petitioner if the men had left the barn (when petitioner got there) to go on to the grove in his car if it zvas all right with Mr. Bailey. On cross examination he hedged somewhat on being asked if he could have told petitioner he could take his car to the grove. He stated that he could have, but he did not remember it; that he “usually always” asked Mr. Bailey first before he gave anybody permission.
Petitioner drove his wife back to their home where he left her and then went to the barn where he asked Bailey to lend him the $50.00. He admittedly lied to Bailey as to his reason for need of the money, stating that he had been arrested for drunken driving and needed the $50.00 to pay a bondsman. He explained the lie as necessary to get the money as Bailey had refused to lend him money previously. Bailey smelled whiskey on his breath and could tell that he had a hangover but felt petitioner would sweat it out at the grove. He told petitioner to go on out to the grove, and that he would send the money out to him later. Petitioner’s crew was loading the truck at the time, and Bailey expected petitioner to go out with them in the truck as was the regular practice. He testified in substance that petitioner did not ask him for permission to take his own car; that employees did not have authority to take their own cars to the grove without permission from him; that when he needed to have an employee take his own car (in order to keep from tying up a company truck all day) he asked him to do so and paid him for the gasoline out and back; that petitioner had no permission to take his own car.
Petitioner, knowing his crew had not left the barn, got in his own car, drove to a grocery store on the route, paid a personal bill to the store, bought a lunch and left for the grove. In route he had the aforesaid wreck resulting in his injury.
There is a competent, substantial evidence to support the deputy commissioner’s finding that petitioner had no authority to drive his own car to the grove. *196 From the evidence it is apparent that he drove his own car for a personal motive rather than to use the transportation furnished by his employer. It does not appear that it was customary for employees to drive their own cars from the barn to the grove. Occasionally it was done but upon express permission being given. If done at other times, it was without the employer’s knowledge. As previously discussed, there is conflict- in the testimony as to whether or not the foreman gave petitioner unqualified permission on this particular morning, but the deputy commissioner was the proper judge of the credibility of the witnesses, and, in weighing their testimony, he found that no such permission was given. Petitioner, in using his car under these circumstances, was not fulfilling any duties of his employment and was not engaged in anything incidental to it. He was engaged in a purely personal mission.
Petitioner relies upon Kennedy v. Fulghum, 159 Fla. 896, 32 So.2d 919, in support of his contention that the accident was one arising out of and in the course of his employment. While the facts in Kennedy and those here are in some respects similar, in Kennedy the employees customarily reported for work at a downtown office at 7:00 o’clock A.M., where they loaded equipment on a company truck for transportation to the job and either rode from there to the job on said truck, went in their own cars, or in the car of a fellow employee, no permission to go in a private car being required. Here the deputy commissioner, based on competent, substantial evidence, found that permission of the employer was required for an employee to drive his own car to the grove. Contrary to the practice in Kennedy, it was not customary in the case sub judice for an employee to drive his own car to the grove without specific permission. The accident was not one arising out of and in the course of petitioner’s employment. The petition for writ of certiorari is, therefore, denied.
It is so ordered.
DREW, C. J., and ROBERTS, O’CON-NELL and BARNS (Retired), JJ., concur.