274 So.2d 530 (1973)
Marcia K. FELTNER, Petitioner,
v.
SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY and the Industrial Relations Commission, Respondents.
No. 42470.
Supreme Court of Florida.
March 7, 1973.
*531 Lloyd W. Jabara of Jabara & Richard, Miami, for petitioner.
Eugene L. Heinrich, of McCune, Hiaasen, Crum, Ferris & Gardner, Ft. Lauderdale, and Kenneth H. Hart, Jr., Tallahassee, for respondents.
ERVIN, Justice.
This cause is before us on petition for writ of certiorari to review a decision of the Industrial Relations Commission which sustained a decision of the Judge of Industrial Claims.
Petitioner-claimant is the widow of the deceased employee, Robert M. Feltner, Jr., who was employed as a switchman for the Southern Bell Telephone & Telegraph Company (hereinafter referred to as Southern Bell). His duties included the maintenance of telephone switching equipment and his normal working hours were from 8:00 A.M. to 5:00 P.M. at the employer's central office. Equipment malfunction was not limited to these hours, however, and for this reason Felton, and other members of his six-man switching group, often received a "call-out" after they returned home in the evening. The employer maintained a list whereon each member of the switching group appeared in an order dependent upon the amount of overtime he had worked during the immediately preceding period. When a breakdown occurred, the switching foreman would contact the employee with the least accumulated overtime and request him to report to the site of the malfunction, which was usually the central office location.[1]
On the evening of February 9, 1970, at approximately 8:45 P.M., Feltner was at home, having completed his regular workshift that day at 5:00 P.M., when he received a call-out from his foreman. He was asked to report to the central office and correct an equipment malfunction. Approximately fifteen minutes later, while driving his own vehicle over the most direct route to the employer's place of business, Feltner was involved in a fatal automobile accident.
The issue before the Judge of Industrial Claims and, in turn, the Industrial Relations Commission, was whether the accidental death arose out of and in the course of employment. See § 440.02(6), F.S.A. The Judge of Industrial Claims apparently relied heavily on testimony presented by Southern Bell's foreman in finding as a *532 fact that the decedent was not "required" to accept an overtime call-out:
"Neither decedent nor any other member of the group was required to be `on-call' while off duty or required to `report in', advise as to his whereabouts or to give any reason for refusing to accept an overtime `call-out'."
The Industrial Relations Commission quoted the above language in its order and likewise denied the claimant compensation. The Commission reasoned that since the decedent was not "on-call," he was not excepted from the exclusionary "going and coming" rule which denies compensation for injuries received while traveling to and from one's place of employment. See, e.g., Fidelity & Casualty Co. of N.Y. v. Moore, 143 Fla. 103, 196 So. 495 (1940). Although the Commission did not cite authority for what it referred to as Florida's "on-call exception" to the going and coming rule, there are several instances where we have granted compensation for accidents that occurred while the employee was performing services additional to those contemplated by his day-to-day work schedule. Cf. Bowen v. Keen, 154 Fla. 161, 17 So.2d 706 (1944); Sweat v. Allen, 145 Fla. 733, 200 So. 348 (1941).
In Bowen the employee's duties included the solicitation and sale of feed and other articles of merchandise for the grain company where he worked. 8:00 A.M. "with exceptions" was the established hour at which he normally began his daily work routine. On the evening of February 24, 1942, his employer "directed" that he return to the place of business early the next morning, obtain a truck, and make two trips in behalf of his employer. Accordingly, he arose approximately an hour earlier, and was on his way to obtain the truck when he was struck down and killed at around 7:00 A.M. on the highway between his home and the employer's place of business. After reviewing at length numerous decisions both within and without Florida that dealt with the going and coming rule, we held that the death of that employee did arise out of and in the course of his employment.
"While it may be true that the instructions given by the employer to his employee on the previous night `to come to work earlier', standing alone as a single instruction as to the day's work, may not have subjected the employee to greater or different hazards of risk than ordinarily when beginning work at 8 o'clock, but the instructions were more than `to come earlier.' The employee was subject to call, as clearly shown by the testimony, and having been fully instructed for the day's work on the previous night and being killed while carrying out the instructions, when aiding, advancing and facilitating the business interests of his employer, are facts sufficient in law for us to hold that the death of the employee, under the peculiar circumstances of this case, arose out of and in the course of his employment ... [citing authority]." (Emphasis supplied) Supra, at 710 of 17 So.2d.
Although neither administrative tribunal makes specific reference to Bowen in its order, the Judge of Industrial Claims and the Industrial Relations Commission have attempted to distinguish the instant cause from the Bowen holding, by finding that Feltner was not "directed" or "required" to be on-call. A review of the record has led us to conclude that this is a shallow, semantics-over-substance approach which ignores the realities of the employment relationship and misplaces emphasis as to our language in that decision and many of the cases cited therein. It is naive and unrealistic to assume that because the deceased was "asked" by his foreman to report into work at 9:00 P.M., that he was free to ignore the request and continue about his personal business. Employees with that attitude are apt to find themselves either overlooked when a promotion is sought, or among the ranks of the unemployed. Petitioner's testimony indicates that her deceased husband had received as many as *533 six call-outs in one night, that he considered it a "black mark" on his record to ignore such a request, and that he "would never refuse a call-out." (Emphasis supplied.) In addition, under direct examination, Southern Bell's plant supervisor testified that if a man should refuse to accept a call-out, the overtime list was calculated so as to reflect the total number of hours "offered" to each employee for purposes of determining who would be contracted when the next call-out occurred. Southern Bell recognized the inconvenience necessitated by a call-out after normal working hours. Under the terms of the union agreement quoted earlier, Feltner and other members of his crew were paid a minimum of three hours pay, even though, according to the foreman's testimony at the hearing, the call-out lasted only "ten minutes." Supra, note 1. Thus, the list was maintained for the employer's convenience and operated so as to discourage employee recalcitrance.
Emphasis should not be placed on the fact that the deceased could have ignored the request to work overtime, but rather on the fact that he responded positively to his supervisor's request, as he had so often done in the past, and set about "aiding, advancing and facilitating the business interests of his employer... ." Bowen v. Keen, supra, at 710. When contacted by his foreman, he promptly agreed to leave the security and comfort of his home and perform the services necessary to correct the equipment malfunction. The nocturnal journey which was then required, was not part of the deceased's daily routine, but was a part of the rendered service. Under these special circumstances, the conclusion that the accidental death arose out of and in the course of employment is inescapable.
The order of the Industrial Relations Commission is quashed and the cause is remanded with directions to remand it to the Judge of Industrial Claims for entry of an order allowing compensation in accordance with the provisions of the Act.
ROBERTS, BOYD and DEKLE, JJ., and SPECTOR, District Court Judge, concur.
CARLTON, C.J., agrees to conclusion only.
McCAIN, J., dissents.
NOTES
[1] Provision for pay rates during a "call-out" is found in § 3.05 of the Agreement between Communications Worker of America and Southern Bell Telephone and Telegraph Company (effective May 14, 1968) which states in part:

"When work on a week day is a "call-out" as defined in 1.03, employees shall be paid at the overtime rate, subject to the following:
1. A minimum of two hours pay at the overtime rate if the call-out starts at or after 7:00 A.M. and before 7:00 P.M.
2. A minimum of three hours pay at the overtime rate if the call-out starts at or after 7:00 P.M. and before 7:00 A.M.
3. A minimum of three hours pay at the overtime rate for employees working tours ending at 8:00 P.M. or later if the call-out starts at or after 7:00 A.M. and before 7:00 P.M. the following day."