SUNDBERG, Justice,
dissenting.
I respectfully dissent from denial of the petition for certiorari by the majority of my colleagues. I do so because I believe the Industrial Relations Commission departed from the essential requirements of law in this case. Scholastic Systems, Inc. v. LeLoup, 307 So.2d 166 (Fla.1974).
Petitioner was employed as a police officer by respondent City of South Daytona. While attending a social gathering, held at the home of the chief of police, petitioner injured his back during a softball game. This injury resulted in petitioner’s total disability and ultimate discharge by respondent when he was no longer able to perform his former duties.
The parties disagree on whether the social activity was sponsored and financed by respondent. Petitioner asserts that it was, alleging that funds for the party were secured from the operation of vending machines located on the premises of the respondent. Petitioner concedes that employ *459 ees were not required to attend the party, but maintains that the evidence reflects that they were strongly encouraged to do so. Respondent contends that the vending machines, whose profits funded the party, were owned by the police officers, rather than the department. In addition, it asserts that petitioner was under no direct duty or instruction to attend the function.
The parties apparently agree that petitioner is entitled to Workmen’s Compensation if (i) the social gathering falls within the orbit of petitioner’s employment or (ii) the employer derives substantial direct benefit from the activity. The Judge of Industrial Claims found the claim to be compen-sable because the social gathering fell within the orbit of petitioner’s employment. She concluded that there was evidence to support the allegation that pressure was brought to bear on petitioner to attend the function. In addition, she found that respondent directly benefited by the increased morale of the employees resulting from participation in such social activities.
In his treatise on Workmen’s Compensation law, Professor Arthur Larson postulates that recreational or social activities are within the course of employment when:
(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.
Larson’s Workmen’s Compensation Law, Vol. 1, § 22.00.
The Judge of Industrial Claims found the existence of both (i) required participation and (ii) substantial benefit on the part of the employer. The Industrial Relations Commission determined that the finding of required participation was not supported by competent substantial evidence and that the Judge of Industrial Claims misapplied the law with respect to the issue of direct employer benefit. I concur with the Industrial Relations Commission as to direct employer benefit because both the evidence and the express findings of the Judge of Industrial Claims support nothing more than a general increase in employee morale resulting from participation in the recreational activities. As Professor Larson states:
Controversy is encountered also when the benefit asserted is the intangible value of increased worker efficiency and morale. Basically, the trouble with this argument is not that such benefits do not result, but that they result from every game the employee plays whether connected with his work or not. In this respect, the argument is reminiscent of the same view sometimes heard in connection with the personal comfort cases: eating, resting, and the like do indeed improve the efficiency of the employee, but this is equally true (and even more true) of the sleeping and eating which he does at home. And so, just as in the sleeping and eating cases some arbitrary time and space limitations must circumscribe the area within which the “benefit” establishes work-connection, the recreation cases must submit to some similar limitation, since otherwise there is no stopping point which can be defined short of complete coverage of all the employee’s refreshing social and recreational activities. It can be taken as the distinctly majority view that these morale and efficiency benefits are not alone enough to bring recreation within the course of employment. (Footnotes omitted) Larson’s Workmen’s Compensation Law, Vol. 1, § 22.30.
I depart from a majority of my brothers upon the issue of whether participation at the event was expressly or impliedly required by the employer. The testimony on this issue and the inferences to be drawn therefrom were conflicting. Petitioner and one other officer generally testified that *460 they felt a compulsion to attend such gatherings lest they lose favor with the chief of police. Other employees of respondent testified they felt no such compulsion. However, the chief of police testified that he directed a call to the police department dispatcher advising him to contact off-duty officers to ascertain whether they would be in attendance. This occurred on the day of and during the course of the party. Petitioner maintains that such evidence demonstrates compulsion being exerted upon employees to attend the function. Respondent draws a different conclusion from the testimony and maintains that it was nothing more than an inquiry by the chief of police to ascertain the exact number who would be present before he commenced preparing the food for the occasion. I agree that either inference can be drawn from the testimony. The point is that the Judge of Industrial Claims apparently drew the same inference as petitioner. This, of course, is the function of a trier of fact. It would not be worthwhile to review or summarize further the evidence before the Judge of Industrial Claims. Suffice it to say that I conclude there existed competent substantial evidence as well as inferences to be drawn from the evidence to support the order of the Judge of Industrial Claims upon the issue of pressure being exerted impliedly requiring participation in the event. Certainly there was sufficient evidence of “pressure” to bring this case within the purview of the rationale stated in Fletner v. Southern Bell Telephone & Telegraph Co., 274 So.2d 530 (Fla.1973). In that case which involved an employee who had the right to refuse overtime, Justice Ervin noted:
Although neither administrative tribunal makes specific reference to Bowen in its order, the Judge of Industrial Claims and the Industrial Relations Commission have attempted to distinguish the instant cause from the Bowen holding, by finding that Fletner was not “directed” or “required” to be on-call. A review of the record has led us to conclude that this is a shallow, sematics-over-substance approach which ignores the realities of the employment relationship and misplaces emphasis as to our language in that decision and many of the cases cited therein. It is naive and unrealistic to assume that because the deceased was “asked” by his foreman to report into work at 9:00 P.M., that he was free to ignore the request and continue about his personal business. Employees with that attitude are apt to find themselves either overlooked when a promotion is sought, or among the ranks of the unemployed. . . . 274 So.2d 530 at 532.
Respondent and, apparently, the majority of my colleagues conclude that the rule announced in Chicken N’ Things v. Murray, 329 So.2d 302 (Fla.1976), amplifying the standard for review enunciated in Scholastic Systems, Inc. v. LeLoup, supra, and Mahler v. Lauderdale Lakes National Bank, 322 So.2d 507 (Fla.1975), precludes our disturbing the decision of the Industrial Relations Commission because there is evidence upon which the Commission’s finding can be supported. If the cited cases support the proposition asserted, then I would recede from those cases. As pointed out by Justice Adkins concurring in Chicken N’ Things v. Murray, supra, and Hughes v. Public Finance Service, Inc., 319 So.2d 18 (Fla.1975), in reviewing orders of the Judges of Industrial Claims, the Industrial Relations Commission serves as an appellate court and the method of review is in the manner of an appeal. Upon review by appeal, the reviewing court is precluded from reweighing the evidence. The trier of fact will not be reversed on the facts if there is competent substantial evidence to support its findings. Consequently, if there is competent substantial evidence to support an order of the Judge of Industrial Claims, the Industrial Relations Commission departs from the essential requirements of law when it, nonetheless, reweighs or reevaluates the evidence before the Judge of Industrial Claims and reaches a contrary result. The Industrial Relations Commission, unlike the Public Service Commission, is not the original trier of fact, but rather sits in review of the judges of Industrial Claims who are the *461 original triers of fact. When the Commission reweighs and reevaluates the evidence before the Judge of Industrial Claims and substitutes its judgment thereon for that of the Judge of Industrial Claims there is a departure from the essential requirements of law which creates a proper case for review by certiorari in this Court. The principles of law articulated so recently by this Court in Shaw v. Shaw, 334 So.2d 13 (Fla.1976), and Herzog v. Herzog, 346 So.2d 56, (Fla.1977), are no less applicable to the Industrial Relations Commission than to District Courts of Appeal.
Accordingly, I would grant the petition for certiorari and quash the order of the Industrial Relations Commission with directions to reinstate the order of the Judge of Industrial Claims.
ADKINS, J., concurs.