Plaintiff was seriously injured when sideswiped by a rapidly moving motor truck on the highway about three miles south of the village of Pollock in Grant Parish, Louisiana, at the hour of 12:10 a.m., January 7, 1941, and sues his alleged employer, Reich Brothers and its component members for workmen's compensation at the rate of $20 per week for the period of 400 weeks. There is no dispute about the facts of the case. That plaintiff was totally disabled to perform any sort of work whatever is not seriously questioned. The suit is resisted on two grounds, to-wit:
1. That the relation of plaintiff and Reich Brothers under the contract between them was not that of master and servant, but that of independent contractor and contractee.
2. In the alternative, that the accident did not occur during the course of the *Page 326 
employment nor did it arise out of or have causal connection therewith.
The trial of the case below is unique in that defendants offered no testimony nor other evidence. They appealed from judgment in favor of plaintiff as prayed for by him.
Reich Brothers had a contract with an agency of the United States to haul and deliver limestone rock from a pit seven miles north of Pollock to Camp Livingston, located approximately 12 miles south of Pollock, to be used in the construction of roads in and about the camp. The rock had to be transported by trucks from the pit over and along United States Highway No. 165, which connects the cities of Alexandria and Monroe, Louisiana.
Defendant, if it owned any trucks, did not employ them in hauling the rock but arranged with a number of truck owners, including plaintiff, to do the hauling. Under the agreement with plaintiff he was to furnish his own truck, buy oil, gas, etc., from defendant and pay for it himself. He was paid 70¢ per cubic yard for rock delivered, and was required to operate his truck continuously for twenty-four hours each day, except possibly Sunday.
The agreement involved was made on January 2, 1941. Plaintiff began work the following day. He engaged two helpers, who, with himself, drove the truck for eight hours each. This was repeated on January 4th. One of the helpers secured other employment and plaintiff and the remaining helper operated his truck for twelve hour shifts on January 5th and 6th. Under this arrangement plaintiff began work at midnight.
Neither plaintiff nor his helper lived near the scene of their labors and for convenience they engaged sleeping quarters in a rooming house three miles south of Pollock on the highway, which was practically mid-way between the pit and the camp. At the hour of 11:30 p.m. January 6th, plaintiff and a driver of another truck arose, dressed and walked to the highway about one block away, as had been done the two previous nights, there to await arrival of their trucks. Very soon thereafter the other fellow's truck arrived from the south, empty. It was stopped off of the concrete on the east shoulder. Plaintiff learned from its driver that his own truck was at the pit awaiting loading. Nothing remained for him to do save await its arrival. He and his companion were beside the stopped truck, between it and the pavement, when, at said hour, a truck from the north approached at a rapid speed and when near to them suddenly swerved to its left side, crossed the road and inflicted the injuries of which complained. The offending truck did not stop. The identity of its operator is not known.
Under the agreement between plaintiff and defendant, plaintiff was not obligated to haul a specific quantity of gravel. No term for the contract's duration was fixed. He was subject to the orders of his employer and performed his duties strictly as directed by its agents. He was required to operate his truck without cessation. He did have the right to select his own helpers, fix their rate of pay and discharge them at will.
The following modus operandi was observed in compliance with the contract between the parties:
The truck would be driven to the pit, "spotted" at the direction of defendant's agent or agents and filled with rock by a drag-line. Defendant's agent inspected the load, leveled it off, after which the truck's driver was given duplicate tickets stating the quantity of rock in that particular load. The loaded truck was then driven to the camp and unloaded as directed. One of the tickets was there handed an agent of defendant. At the close of a day's hauling, the accumulated tickets held by plaintiff were surrendered and a new one issued. This ticket entitled plaintiff to receive compensation for the entire day's hauling.
Prior to beginning hauling, defendant gave to plaintiff a note directed to all highway patrol men in which it was requested that they pass him "as he is employed by us to haul pit run rock to Camp Livingston." This was done also with all other truck operators hauling rock from this pit.
An independent contractor is defined by Subsection 8 of Section 3 of Act No. 85 of 1926, amending several sections of the Workmen's Compensation Law, as follows: "* * * The term `independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished."
The undisputed facts of the case negative the idea that plaintiff, in legal *Page 327 
contemplation, was independent as regards his contractual relations with and duties to his employer. He was working for a specified recompense but not for a specified result, and was under the control of his principal as to the means and methods by which the work was to be accomplished. He enjoyed no power of discretion as to when the work should be done since he was required to work twenty-four hours of each day. His discharge was a matter entirely within the volition of his principal and could have been done without recourse of any character by him against his employer. The fact that plaintiff could hire and discharge his helpers, fix their rate of pay, and use his own truck in the performance of his duties, does not alter the true relations of the parties. An employee may employ another to assist him in the performance of work assumed by him and at the same time be and remain an employee quoad another.
The case of Litton v. Natchitoches Oil Mill, Inc., La.App., et al, 195 So. 638, 641, is practically on all-fours with the present case. We said therein: "When the facts of the instant case are considered in the light of the above cited authorities, it appears that R.L. Litton occupied the status of an employee; and compensation was correctly awarded for his death. There was no employment for a specific length of time or for the hauling of a definite quantity of seed. He was permitted to haul only such quantities and kinds of seeds and at such times as the Oil Mill officials directed, and his working from day to day depended entirely on their will. Existing, therefore, was the right to interfere with and have practical control and supervision over decedent, as referred to in the aforementioned cases."
Counsel for defendant while virtually conceding that this decision is a precedent for the present one, criticizes its correctness. As the Supreme Court denied a writ in the case with the statement that, under the facts found, "judgment is correct", we feel authorized to follow the same as correctly expounding the law applicable to the facts about which there was no serious dispute.
This court held in Morgan v. Nelms, 5 La.App. 414, that: "The fact that an employee, suing for compensation under the Workmen's Compensation Act No. 20 of 1914, as amended, furnished his own wagon and team, employed laborers to help him, and was paid in accordance with the number of logs hauled is not incompatible with the relation of employer and employee, nor does it make him an independent contractor."
To the same effect is Beebe v. McKeithen Construction Company, 5 La.App. 179, Powell v. Spencer Brothers, 5 La.App. 218, and Lee v. Mark H. Brown Lumber Company, 15 La.App. 294, 131 So. 697. In fact this line of decisions has not been deviated from by this or any other appellate court of the state. It is well supported by Burt v. Davis-Wood Lumber Company, 157 La. 111, 102 So. 87.
Justice Rogers in Dick v. Gravel Logging Company, Inc.,152 La. 993, 95 So. 99, 101, in forceful language enunciated the underlying philosophy of the Employer's Liability Act and fixed therein a sane and generous rule of controlling influence in cases of the character now before us. As the court's organ, he said:
"The object of the statute is to shift the burden resulting from the accidents of our intense industrial activities from the employer to the general public. It is humane in its purpose, and its scope should be enlarged rather than restricted. Its provisions should be liberally construed, so as to include all services that can be reasonably said to come within them.
"Under the narrow and restricted construction sought to be placed upon the statute by defendant's counsel, every workman employed to do piece work in shop, factory, home, or elsewhere would be classed as an independent contractor, although he is not more free from the control and direction of his employer than the most ordinary day laborer. If this construction was to obtain, it would only be a matter of a short while before the law would become a legal curiosity or a mere memory instead of the wise, beneficial, active, remedial statute its reasonable interpretation and application can make it."
We are of the opinion that within the meaning of the Employer's Liability Act, Act No. 20 of 1914, as construed by many court decisions, plaintiff was performing services arising out of and incidental to his employment in the course of his employer's business when the accident occurred.
Plaintiff was injured at a place on the route necessary to be traveled in the discharge of his duties. The time of the accident *Page 328 
was within the period he was due to relieve his helper, and take over the truck's operation. He was at the locus agreed upon for the change, the same place at which prior changes had been made. His duties reasonably required that he be there when injured. The scene of his work consisted of the pit, the place of unloading and the intervening distance; and it may be said with equal force that for the purposes of this case these places and the distance between them constituted the premises of the master. If plaintiff's status was that of employee while attending his truck when being loaded, that status continued while driving the truck along the highway, unloading it and returning for other rock. And, although this status was temporarily suspended during the hours he was not personally operating the truck, it again arose while he was on the highway at the hour stated, waiting to actively resume labor. There was causal connection between the employment and plaintiff's presence at the place where injured. We think the accident resulting in the injury arose out of the employment and in the course thereof as certainly as if it had happened at the pit.
It is true, as argued, that the law recognizes two distinct exceptions to the general rule that to be compensable an accident must occur on the premises of the master during work hours. These are: (1) where the master furnishes transportation to and from work, and (2) where the injury occurs near to the master's place of business and results from a hazard to which the employee was exposed because of his employment, such hazard being greater to him than to members of the public generally. However, the test involved in the latter exception, as said in Harvey v. Caddo DeSoto Cotton Oil Company, 199 La. 720, 6 So.2d 747-749, has not been uniformly followed. It was not adhered to but clearly deviated from in Kern v. Southport Mill, Ltd., 174 La. 432,141 So. 19, 20. We think the court's construction of the compensation law, in the light of the facts of that case, is decisive of the present question. We quote liberally from the opinion, to-wit:
"Plaintiff was employed by defendant as a pipe fitter at a wage of $33 per week. He was directed to do some outside work and then return to the mill. On returning he stepped out of a street car into the path of an automobile; was struck down, and permanently and totally injured; and now claims compensation.
* * * * *
"The statute then provides (Act No. 20 of 1914, § 2) that in all cases to which it applies, compensation shall be paid to an employee who suffers personal injuries by `accident arising out of and in the course of such employment.'
"Now an accident occurs in the course of an employment when it takes place during the time of such employment; just as a happening occurs in the course of any given day when it takes place during that day. Hence the provision that the accident, to entitle the employee to compensation, must occur in the course of his employment, means nothing more than that it must have taken place during the hours of employment and not at any other time.
"In this case the accident occurred very certainly `during the course' of plaintiff's employment, since he was on his way back to the mill pursuant to express instructions.
"But that alone is not enough for recovery; the statute further requires that the accident must also `arise out of' the employment. By which is meant, that the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. But time, place, and circumstance must determine this. When the ill-fated Titanic foundered in the spring of 1912, all persons aboard her were situated exactly alike as to time and place; but they were not all situated alike as to circumstance. Those who traveled for pleasure were present of their own free choice alone; those who traveled for business, whether their own or that of another, were there of necessity. And, when one finds himself at the scene of accident, not because he voluntarily appeared there but because the necessities of his business called him there, the injuries he may suffer by reason of such accident `arise out of' the necessity which brought him there, and hence `arise out of' his employment, if it so be that he was employed and his employment required him to be at the place of the accident at the time when the accident occurred.
"In determining, therefore, whether an accident `arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his *Page 329 
employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?
"The question whether or not the employee might have been injured in the same way, and even at the same place and time had he not been called there by the necessities of his employer's business, but had gone there only for his own pleasure or in pursuit of his own business, has nothing whatever to do with the case. It was his employer's business which called him to the place and time of the accident and not his own pleasure or business; and hence his injuries arose out of his pursuit of his employer's business and not out of his pursuit of his own business or pleasure.
"In the final analysis that is the sum and substance of the principle on which all compensation cases rest, notwithstanding the many words in which that principle has been wrapped up. * * *"
The United States Supreme Court in Cudahy Packing Company v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 154, 68 L.Ed. 366-369, 30 A.L.R. 532, while discussing the question of whether the accident involved in that case arose out of the employment and whether there was causal relationship between the two, said:
"Whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case. The fact that the accident happens upon a public road or at a railroad crossing and that the danger is one to which the general public is likewise exposed is not conclusive against the existence of such causal relationship, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree.
"Upon this question of causal relationship, the English decisions are instructive. In Pierce v. Provident Clothing 
Supply Co. (1911) I K.B. 997 [80 L.J.K.B.N.S. 831, 104 L.T.N.S. 473, 27 Times L.R. 299, 55 Sol.Jo. 363, 4 B.W.C.C. 242], where a collector of the company, while riding a bicycle in the course of his employment, with the acquiescence of the company, was knocked down and killed by a tram car, the employer was held liable because, by reason of his duties, the employee was more exposed to the risks of the streets than ordinary members of the public. In the opinion by Buckley, L.J., it is said [(1911) I K.B. p. 1003]: `An accident arises out of the employment where it results from a risk incidental to the employment, as distinguished from a risk common to all mankind, although the risk incidental to the employment may include a risk common to all mankind.'"
In the Harvey case, supra [199 La. 720, 6 So.2d 751], the court clearly deviated from the decisions establishing the principle in the second exception, by saying: "We prefer to place our decision on what we believe to be a sound footing, that is — that the deceased, by reason of his employment, was required to be in a building which fell upon him; that his death was due to the fact that his employment necessitated that he be at the place where the accident occurred and that, therefore, giving the compensation act the liberal interpretation to which it is entitled, the accident arose out of, and was incident to the employment."
Defendant's counsel have cited many cases in support of the alternative defense and have briefed the subject elaborately and plausibly. We have given due consideration to the excellent brief submitted. No good purpose would be promoted by analyzation of these many cases and differentiating them from that at bar. It is true, as has frequently been said by different courts when discussing questions of the character herein presented, that no two cases have identical facts and no general rule may be formulated as a controlling guide in all cases. Each case, in the final analysis, in large measure, must be solved from its own peculiar facts with proper application of the law pertinent to them.
The judgment appealed from, for the reasons stated, is affirmed with costs. *Page 330