85 So.2d 304 (1956)
Shepherd HIMES, Sr., et ux., Plaintiffs-Appellees,
v.
Robert G. AVINGER, Encyclopedia Britannica, Inc., and Travelers Indemnity Company, Defendants-Appellants.
No. 8472.
Court of Appeal of Louisiana, Second Circuit.
February 2, 1956.
Rehearing Denied March 2, 1956.
Writ of Certiorari Denied May 7, 1956.
*305 Blanchard, Goldstein, Walker & O'Quin, Shreveport, for appellants.
Myers, Gatti & Egan, Shreveport, for appellees.
AYRES, Judge.
The plaintiffs, Shepherd Himes, Sr. and his wife, Tara Robinson Himes, as the parents of Shepherd Himes, Jr., a minor 15 years of age, seek recovery of damages as the result of their son's wrongful death in an accident occurring April 29, 1954, about 11:45 P.M. on Hollywood Avenue near the outskirts of the City of Shreveport by being run into and knocked from a motor scooter, on which he was riding as a passenger, by an automobile owned and driven by Robert G. Avinger. The defendants are Avinger, Encyclopedia Britannica, Inc., Avinger's alleged employer, and Travelers Indemnity Company, the employer's liability insurance carrier.
The case was tried with intervention of a jury, which rendered a verdict in plaintiffs' favor and against the defendants, in solido, for $10,000 for each of the plaintiffs, plus $337.50 for funeral expenses incurred in the interment of their deceased son, and $150 as damages sustained to the motor scooter.
Judgment was rendered and signed pursuant to said verdict, and the defendants, Encyclopedia Britannica, Inc. and Travelers Indemnity Company, have perfected appeals to this court. Avinger did not appeal.
That the proximate and sole cause of the accident and of the son's death was the negligence of Avinger as the driver of the automobile striking the motor scooter upon which their son was riding as a passenger, is thoroughly established by a great preponderance of the evidence. In fact, the evidence does not admit of any doubt as to the circumstances of the accident and the liability of the defendant. On the occasion of the accident, Shepherd Himes, Jr., was returning with his brother, Sherman Himes, from work at a grocery store to his home on Tate Street. They were traveling *306 in a westerly direction along Hollywood Avenue, which was the most direct and reasonable route from their employment to their destination. They were riding a Cushman motor scooter operated by Sherman Himes, on the rear of which scooter Shepherd Himes was seated and riding as a passenger. The vehicle was equipped with both head lamps and tail lights, both visible at the time. Avinger, in a Ford Victoria automobile, was likewise traveling in a westerly direction on Hollywood Avenue and approached the motor scooter from the boys' rear. Although there were no other cars in the immediate vicinity and no obstruction to his view, Avinger continued forward, struck the motor scooter and inflicted injuries upon Shepherd Himes, Jr., rendering him unconscious, and from which he died within possibly one-half hour subsequent to the accident. Avinger was guilty of numerous acts of negligence, primarily that of operating a motor vehicle while he was in an intoxicated condition. No real effort was made by counsel for that defendant to avoid liability. In fact, defendants, which have appealed, in brief, state the negligence of Avinger in causing the death of the plaintiffs' son is undisputed.
The sole issues presented for determination on this appeal are (1) whether Avinger was an employee of Encyclopedia Britannica, Inc.; (2) if so, whether at the time of the accident he was performing duties within the course and scope of his employment, and (3) if so, whether the amounts awarded the plaintiffs by the jury and approved by the trial court are excessive.
Plaintiffs have not answered the appeal.
From the record it is established that the Travelers Indemnity Company had issued to Encyclopedia Britannica, Inc., and which was at the time of the accident in effect, a public liability and property damage insurance policy covering and protecting it against any and all losses for which it may be responsible sustained by the operation of motor vehicles not owned by it, which policy is denominated "Employer's Non-Ownership Liability" policy. This insurance coverage did not extend to Avinger himself or to the operation of his automobile except insofar as such liability may have extended to Encyclopedia Britannica, Inc. In other words, if that concern was liable, then the Travelers Indemnity Company is likewise responsible.
The issues enumerated hereinabove will now be considered in the order stated. We are convinced, however, from our examination of the record that the evidence preponderates in plaintiffs' favor upon the two principal contentions. There is little room for doubt that it has been established to that required degree of legal certainty that Avinger was a servant, agent and employee of Encyclopedia Britannica, Inc., and that at the time of the accident he was performing his duties within the course and scope of his employment. The written contract itself, without the aid of the additional evidence, amply establishes the employer-employee relationship between Encyclopedia Britannica, Inc. and Avinger. By this contract, effective as of January 1, 1954, the Encyclopedia Britannica, Inc., employed Robert G. Avinger as its district manager over a territory comprising eleven parishes in northwest Louisiana for the promotion of the sales of its publications. For his compensation he was to be paid a commission with additional compensation termed a "quality bonus" for sales made personally by him. Avinger was required by the terms of the contract to devote his entire time and attention to the performance of his duties as prescribed therein, and it was stipulated that he was to have no other employment of any kind. It was particularly recited that he "shall exercise and carry out his powers and duties subject to such directions and instructions as the Company may from time to time confer or impose upon him." The Company reserved the right to enlarge or diminish the territory assigned to Avinger or to transfer him to another territory and to alter the rate of his commissions or compensation and to terminate his employment at its option on giving him notice. The Company agreed to finance the sales and sales promotion of its publications and to charge said expenses *307 against Avinger's commissions. Avinger was authorized as district manager to enter into contracts with other prospective agents, in accordance with forms provided by the Company and at such terms as it might stipulate, with the authority, however, that he might discharge such before they established a rating with the Company, otherwise such dismissals or the dismissal of representatives furnished him by the Company could only be with its consent. The manner in which Avinger might further conduct the business was further restricted and controlled by specific instructions and sales talks furnished by the Company. Any other method was apparently prohibited.
Additional evidence shows that the Encyclopedia Britannica, Inc., maintained an office at 4533 South Fairway in the City of Shreveport, of which Avinger was manager and in which office a telephone was installed on its order to the Southern Bell Telephone Company and which was listed in its name.
According to Avinger's testimony, he was employed by a Mr. McSwain, divisional manager for Encyclopedia Britannica, Inc., and that, in accordance with the terms of the contract, his territory had been enlarged to extend from Marshall, Texas, to Jackson, Mississippi, and from Alexandria, Louisiana, to the Arkansas line. In the performance of his duties under his contract of employment, the use of an automobile was indispensable. From the nature of his work and the extent of his territory in this modern day and time, this is self-evident. He testified, however, that the use of an automobile was very necessary to his work and that had he not had the use of a motor vehicle he could not have secured the job.
Encyclopedia Britannica, Inc., contends that Avinger was an independent contractor. In Coon v. Monroe Scrap Material Co., 191 So. 607, 610, this court, through the late Judge Taliaferro as the author of the opinion, in referring to a salesman who at the time of an accident was engaged in his employer's business and performing duties he was employed to perform, the employer having a right to direct the salesman's action, stated:
"It is fundamental to the existence of this relationship that there must be absolute independence of action on the part of the contractor in the execution of the work assumed by him. If the contractee has the power to interfere with or control the manner of execution or performance, then the contractor ceases to be independent. His status degenerates into that of an employee or servant. See Gallagher [Gallaher] v. Ricketts, La.App., 187 So. 351.
"In the present case, as touched upon supra, defendant unquestionably had the power to direct and control Ablon in the performance of the weightier phases of his duties. It will not do to say that one who supplies all the equipment needed in the performance of services of the character we are discussing, and who advances the cash money indispensable to the successful conduct of the work, has not the inherent power to wield a deciding and controlling influence upon the person doing the work. He is wholly dependent upon the will of his employer because, without the financial assistance and the free use of the equipment, the work could not be performed. See: Dinet v. Orleans Dredging Co., Inc., La.App., 149 So. 126; Goff v. Sinclair Refining Co., La.App., 162 So. 452."
In Nesmith v. Reich Bros., La.App., 14 So.2d 325, 326, plaintiff sued for workmen's compensation for injuries sustained as the result of a collision between a truck operated by him and that of another on a highway in Grant Parish. One defense was that plaintiff was an independent contractor and the relationship was not that of master and servant. Reich Brothers had a contract with an agency of the United States Government to haul and deliver limestone rock from a pit near Pollock to Camp Livingston for use in the construction of roads in the camp. The rock had to be transported by truck. An agreement was *308 made with plaintiff to haul rock with his truck. Plaintiff engaged two helpers, who, with himself, drove the truck eight hours per day. While standing on the road side awaiting the arrival of his truck, a truck approached at a rapid speed, and on its approach suddenly swerved to its left and crossed the road, striking and injuring plaintiff and inflicting the damages of which he complained. Under the agreement plaintiff was not obligated to haul a specific quantity of gravel or rock; no term for the duration of the contract was fixed. He was subject to the orders of his employer and performed his duties as directed by its agents. He was required to operate his truck without cessation. He did have the right to select his own helpers, fix their rate of pay, and discharge them at will. After considering these facts, this court stated:
"The undisputed facts of the case negative the idea that plaintiff, in legal contemplation, was independent as regards his contractual relations with and duties to his employer. He was working for a specified recompense but not for a specified result, and was under the control of his principal as to the means and methods by which the work was to be accomplished. He enjoyed no power of discretion as to when the work should be done since he was required to work twenty-four hours of each day. His discharge was a matter entirely within the volition of his principal and could have been done without recourse of any character by him against his employer. The fact that plaintiff could hire and discharge his helpers, fix their rate of pay, and use his own truck in the performance of his duties, does not alter the true relations of the parties. An employee may employ another to assist him in the performance of work assumed by him and at the same time be and remain an employee quoad another.
"The case of Litton v. Natchitoches Oil Mill, Inc., La.App., 195 So. 638, 641, is practically on all-fours with the present case. We said therein: `When the facts of the instant case are considered in the light of the above cited authorities, it appears that R. L. Litton occupied the status of an employee; and compensation was correctly awarded for his death. There was no employment for a specific length of time or for the hauling of a definite quantity of seed. He was permitted to haul only such quantities and kinds of seeds and at such times as the Oil Mill officials directed, and his working from day to day depended entirely on their will. Existing, therefore, was the right to interfere with and have practical control and supervision over decedent, as referred to in the aforementioned cases.'"
In Jones v. Shehee Ford Wagon & Harness Co., Inc., La.App., 157 So. 309, it was held that the test of whether a driver of a truck was an independent contractor as respects the automobile owner's liability for injuries caused by a driver's negligence was not that owner did not exercise right of control or direction of driver but that the owner had the right under the contract of employment to exercise right of control or direction. This ruling was affirmed on the review of this case by the Supreme Court in 183 La. 293, 163 So. 129, 132, wherein it was stated:
"The evidence on the subject is conclusive and undisputed that the driver of the Ford car was employed as a salesman for the Shehee-Ford Company, at a regular salary, and not on a commission basis, and that in the rendering of his services he was under the direction and control of his employer, and was subject to discharge if he did not obey the directions of his employer. That means that he was not an independent contractor, but an employee."
The case of McAllister v. Jackson Brewing Co., La.App., 6 So.2d 179, presents a factual situation very similar to the instant case. There it was held that the evidence established that a brewing company's salesman *309 was required to use his own automobile; that the company paid the expense of the maintenance and operation of the automobile but carried liability insurance covering its operation, and that the salesman acted under orders from his superiors, showed that salesman was company's employee even though he had some discretion concerning minor details in making calls, and that he was acting as a servant in the course of his employment at the time of an accident when driving to a sales meeting and, hence, that the company and its liability insurer were liable under the doctrine of respondeat superior for injuries sustained by another employee who was accompanying salesman. There, as here, the employee was required to use his automobile in the performance of his duties, and as a result of which the accident occurred.
Although we have stated that the terms of the contract are sufficient to show the relationship of employer and employee, or master and servant, yet the additional evidence adduced on the trial adds weight thereto. It should be borne in mind, however, that in cases of this nature, each must be determined upon its own particular facts, and that every circumstance considered by the court in formulating its opinion may not of itself, if treated separately, be sufficient to indicate the true relationship of the parties. In such a situation, all the facts and surrounding circumstances should be weighed and considered, and when we consider all the facts and circumstances of this case, as shown by the evidence adduced on the trial, we are only strengthened in our conviction of the correctness of our interpretation of the written contract.
We are here reminded of a statement by Justice Spencer in Johnson v. Mayer, 30 La.Ann. 1203, 1206, made in referring to evidence from which decisive conclusions might be formed, which reads:
"These are small and apparently trifling circumstances, when weighed against the high-sounding periods of an authentic act. But straws are better indicators of the course of the wind than are the marble columns of some imposing temple. It is at unguarded moments that truth eludes the vigilance of fraud and exposes it to detection. `Trifles light as air' may become `confirmations strong as proofs of Holy Writ.'"
There is no question in our mind, after giving thorough consideration to all the facts and circumstances of this case, construed under the principles thoroughly established in the jurisprudence of this State, that no other conclusion could be reached than that Avinger was an agent and employee of Encyclopedia Britannica, Inc.
Next for consideration is the question of whether or not at the time of the accident Avinger was acting within the course and scope of his employment. Avinger was in the exclusive employment of the Encyclopedia Britannica, Inc. His employment extended to and covered twenty-four hours per day. He was prohibited from engaging in any other work or undertaking. From the record, we gather, that the most opportune time of the day for him to perform the services for which he was employed was during the early evening hours following the evening meal, when he could more nearly contact both husband and wife at their home in his endeavor to sell his Company's publications, particularly a set of Encyclopedia Britannica. On the date of this accident, he left his home and defendant's office at about 6:30 P.M., drove to the homes of two or three ladies who were engaged by him in addressing cards or other literature to be mailed to prospective customers. On those occasions he picked up cards and literature already addressed and delivered other cards and literature to be similarly handled. In addition, he visited the home, between 9:00 and 11:00 of one of his salesmen, who was contemplating leaving his employment and taking work elsewhere. His purpose was to persuade this party to remain in his Company's employ, or, if he was unable to do so, to pick up the Company's property which this salesman had in his possession. This consisted of a salesman's kit, various *310 literature, documents and forms. Apparently Avinger was unsuccessful in prevailing upon this party but he did obtain the salesman's kit and other effects belonging to his Company. On leaving that residence Avinger began his return trip to the Company office, where he was to leave the Company literature and the addressed cards and literature, which he was to sort, package and mail the following day. It was while on this return trip that this unfortunate accident occurred in which a young boy lost his life.
Because of immaterial and unimportant discrepancies in Avinger's testimony, particularly as to the exact time he visited the several places on the night of this accident and as to his return journey, defendants question the correctness of Avinger's otherwise concise statements of the occurrence. We cannot attach the importance to this phase of his testimony that counsel does, as, to us, it does not serve to discredit the general chronology of his actions.
Counsel stresses the fact that Avinger stopped at a grocery store at about 8:00 o'clock and purchased some groceries, which act it is contended was a matter personal to him and a departure from his employment. That is a matter of no importance or consequence as Avinger was still engaged primarily about his employer's business. It is conceivable that he might have also engaged in matters of personal interest along with that of his employer's business, and, if he did, that would afford defendants no relief. Even so, it was after that time that Avinger visited the other employee, endeavored to obtain a promise that he would remain with his employer, and, on his failure to do so, obtained the company materials, which, together with the literature above referred to, he was transporting to the company office when the accident occurred. Avinger clearly had not departed from the duties of his employment, or, if it be conceded that he had, the evidence establishes that he had re-entered upon the duties of his employment and was performing same at the time the accident occurred.
Defendants further complain that plaintiffs were permitted to call Avinger as a witness as on cross-examination and to utilize his testimony against the appellants. Litigants are permitted to call their opponents under cross-examination pursuant to the provisions of LSA-R.S. 13:3662-3664, without vouching to the court for the credibility of such witnesses. If it be conceded that this was an error under Section 3663, which is unnecessary for us to determine at this time, the error and irregularity complained of has ceased to carry any importance or significance. We do recognize, however, that the statute does not, in all cases, extend the right and privilege of a litigant to cross-examine one defendant as against his co-defendant. Edwards Bros. v. Berner, 154 La. 791, 98 So. 247; Driefus v. Levy, 140 So. 259.
In this case, the defendants were allowed the privilege of an unrestricted and thorough cross-examination of their co-defendant, where testimony as to the same facts was elicited. Moreover, Avinger's counsel called him as a witness. The testimony of other witnesses corroborated Avinger's testimony upon every essential point on which he testified, as to the visits made by him, as to the cards delivered for addressing and as to the literature picked up for mailing, except as to his visit to the home of the employee, Meyers, who had apparently removed from the City and was not available for service by either plaintiffs or defendants; but, as a physical fact at the time of the accident, Avinger's car contained the materials and effects of the Company which Avinger testified he had procured from Meyers and the other literature which he returning to the office for processing and mailing.
As was stated in the Edwards case, supra, the ruling of the court was of no serious importance and it is entirely harmless to the defendants under the facts and circumstances detailed above. Even in the Driefus case, it was held that where the testimony elicited under cross-examination was not necessary to a decision of the case, only harmless error was committed.
*311 The remaining question is as to the quantum of the award. The jury awarded $10,000 to each of the parents, together with an additional sum of $487.50 to the father representing the funeral expense for their minor son and damage for the loss of the motor scooter upon which he was riding at the time he was killed. A search of the record fails to disclose any evidence whatsoever as to these two items of damages. Accordingly, they have not been proved or established and will have to be rejected.
Plaintiffs were married in 1937 and their deceased son, their oldest child, was born in 1938. At the time of the accident he was fifteen years of age. He was a student at the Booker T. Washington High School. He was studious and diligent in his work and made excellent grades. Both he and his brother were engaged in employment at grocery stores. His earnings, other than a small amount expended for his own personal use, were placed to his savings in anticipation of his attending Grambling College. According to the record, his conduct had always been exemplary and commendable, a matter of joy and happiness to his parents. As shown by his actions, he loved his parents and his home and they reciprocated his affection. His nights were spent at home other than a few with his grandparents across the street. That plaintiffs have suffered greatly in the loss of the love, affection and companionship of their son is apparent. His death was grievous to them, inflicting immeasurable pain, grief and suffering upon them. The deceased was evidently a lad of excellent character and above the average in intelligence and industry. There can be no question as to the justification for an award of substantial damages. After giving due consideration to the verdict of the jury and the facts and circumstances of this case and to the greatly increased costs of living and the depreciation of the value of currency, we are unable to conclude that the award is excessive.
Accordingly, for the reasons herein assigned, the judgment appealed is amended by reducing the award of Shepherd Himes, Sr., from $10,487.50 to $10,000, and, as thus amended, the judgment is affirmed at appellants' cost.
Amended and affirmed.